AO 450 (Rev.,5/85) Jllllgrnent in a Civil Case

# UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

UNITED STATES EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION

Plaintiff,

V.

GLOBAL HORIZONS, INC., D/B/A
GLOBAL HORIZONS MANPOWER,
INC.; CAPTAIN COOK COFFEE
COMPANTY LTD.; DEL MONTE
FRESH PRODUCE (HAWAII), INC.;
KAUAI COFFEE COMPANY, INC,;
KELENA FARMS, INC.; MAC
FARMS OF HAWAII, LLC *NIKIAl*
MF NUT CO., LLC; MAUI
PINEAPPLE COMPANY, LTD.
*A/KIA* MAUI PINEAPPLE FARMS;
ALEXANDER & BALDWIN, INC.;
MASSIMO ZANETTI BEVERAGE
USA, INC.; AND DOES 1-15,
INCLUSIVE

Defendants.

JUDGMENT IN A CIVIL CASE

Case: CIV NO. 11-00257 LEK-RLP

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAIi

March 16, 2015

At 9 o'clock and 15 min a.m.
SUE BEITIA, CLERK



[ ] **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

[v'"] **Decision by Court.** This action came for hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that Judgment is entered in favor of Plaintiff United States Equal Employment Opportunity Commission and against Defendants Global Horizons, Inc. And Maui Pineapple Company, Ltd. pursuant to

the "Findings Of Fact And Conclusions Of Law" filed on December 19, 2014 (ECF NO. [767]).

All claims against the remaining Defendants were resolved through Consent Decrees, filed November 27, 2013 (ECF NO. [651]), and September 3, 2014 (ECF NOS. [720], [721], [722], [723]).  All of the cross-claims were dismissed by stipulations, filed September 30, 2014 (ECF NO. [734]), October 6, 2014 (ECF NO. [735]), October 7, 2014 (ECF NO. [736]), and October 16, 2014 (ECF NO. [751]) and by Entering Order on March 10, 2015 (ECF NO. [772]).

UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION V. GLOBAL HORIZONS, INC., ET AL.; CIVIL NO. 11-00257 LEK-RLP;  JUDGMENT IN A CIVIL CASE

| March 16, 2015 | SUE BEITIA |
| --- | --- |
| Date | Clerk |
|  | /s/ Sue Beitia by EPS |
|  | (By) Deputy Clerk |

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) | CIVIL ACTION NO. 11-00257 LEK-RLP |
| Plaintiff, | ) ) ) | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| vs. | ) ) ) | The Honorable Leslie E. Kobayashi United States District Judge |
| GLOBAL HORIZONS, INC., D/B/A GLOBAL HORIZONS MANPOWER, INC.; CAPTAIN COOK COFFEE COMPANY LTD.; DEL MONTE FRESH PRODUCE (HAWAII), INC.; KAUAI COFFEE COMPANY, INC.; KELENA FARMS, INC.,; MAC FARMS OF HAWAII, LLC N/K/A MF NUT CO., LLC; MAUI PINEAPPLE COMPANY, LTD. A/K/A MAUI PINEAPPLE FARMS; ALEXANDER & BALDWIN, INC.; MASSIMO ZANETTI BEVERAGE USA, INC.; AND DOES 1-15, INCLUSIVE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. PROCEDURAL HISTORY

On April 19, 2011, the EEOC filed its original complaint in this action. Thereafter, Defendant Maui Pineapple Company, Ltd. ("Maui Pineapple")

1

as well as all other named farm defendants except Defendant Global Horizons, Inc. ("Global Horizons" or "Global") filed a series of motions to dismiss the EEOC's complaints.

The Court denied defendants' motions to dismiss while granting in part some of the named farm defendants' motions to dismiss on certain limited issues and the EEOC filed its Third Amended Complaint ("TAC") on July 2, 2012. (Dkt. No. 263.)

Thereafter, on August 1, 2012, Global Horizons filed its first motion for extension of time to file responsive pleading to the TAC. (Dkt. No. 291.) On September 10, 2012, Global Horizons filed its second and final motion for extension of time to file responsive pleading to the TAC. (Dkt. No. 368.) On September 11, 2012, the Court granted Global Horizons' second and final motion for extension of time to file responsive pleading to the TAC. (Dkt. No. 369.) On September 18, 2012, Global Horizons filed its motion to dismiss the TAC. (Dkt. No. 371.) On November 8, 2012, the Court issued an order granting in part and denying in part Global Horizons' motion to dismiss the TAC. (Dkt. No. 399.)

On February 28, 2014 the Court granted in part and denied in part the EEOC's motion for partial summary judgment on Global Horizons' affirmative defenses and denied Global Horizons' motion for partial summary judgment on its laches defense. (Dkt. No. 682.)

2

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 5 of 82   Page ID #:7
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 3 of 77   PageID #:
23130

On February 28, 2014, the Court also granted in part and denied in part the EEOC's motions for partial summary judgment regarding Maui Pineapple's affirmative defenses.  (Dkt. No. 683.)

On March 19, 2014, the Court granted the EEOC's motion for partial summary judgment against Global Horizons.  This Court held that Global Horizons engaged in a pattern or practice of (1) hostile work environment, (2) disparate treatment, and (3) retaliation against the Claimants.  (Dkt. 685; *EEOC v. Global Horizons, Inc.*, 7 F. Supp. 3d 1053 (D. Haw. 2014)).

On June 30, 2014, the Court approved the stipulated default judgment as to Maui Pineapple.  (Dkt. No. 710.)  On August 22, 2014, the Court approved the stipulated default judgment as to Global Horizons.  (Dkt. No. 717.)

By September 3, 2014, this Court entered a Consent Decree as to each of the following other named defendants-Del Monte Fresh Produce, Inc.; Captain Cook, Ltd.; Kelena Farms, Inc.; Mac Farms of Hawaii, LLC nka MF Nut Co., LLC; Kauai Coffee, LLC; Alexander & Baldwin, Inc., and Massimo Zanetti Beverage USA, Inc.  (Dkt. Nos. 651, 720-23.)

On September 5, 2014, the final pretrial conference, which was set for September 29, 2014, was converted to a telephonic status conference.  (Dkt.No. 724.)  Neither Global Horizons nor Maui Pineapple appeared for this status conference.

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 6 of 82   Page ID #:8
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 4 of 77     PageID #:
23131

On September 22, 2014, the EEOC filed a status report wherein it notified the Court, among other things, that (1) a trial would not be necessary to resolve this matter because of the consent decrees entered by the Court and/or the entry of defaults as to the remaining named defendants, and (2) the EEOC was finalizing a motion for default judgment as to Global Horizons and Maui Pineapple for monetary and injunctive relief.  (Dkt. No. 725.)

After the telephonic status conference, Magistrate Judge Richard L. Puglisi issued a minute order wherein he confirmed that the EEOC informed the Court that it wished to proceed by motion and Magistrate Judge Puglisi ordered "the EEOC to file its motion regarding claims on damages and injunctive relief within 30 days." (Dkt.  No. 732.)

In compliance with Magistrate Judge Richard L. Puglisi's minute order (Dkt. No. 732), the EEOC filed its motions for default judgment seeking damages and injunctive relief against Global Horizons and Maui Pineapple on October 16, 2014. (Dkt. Nos. 737-38.)  This Court, however, denied the EEOC's motions for default judgment and ordered that the case would proceed to a jury trial unless the EEOC waived its prior jury demand.  (Dkt. No. 752.)  The EEOC immediately filed its notice of waiver of its prior jury demand and requested that the Court award damages and injunctive relief based upon the supporting

4

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 7 of 82   Page ID #:9
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 5 of 77   PageID #:
23132

documents that the EEOC submitted with the motions for default judgment against

Global Horizons and Maui Pineapple. (Dkt. No. 753.)

On November 4, 2014, the EEOC filed its declarations, exhibits, and

deposition pursuant to this Court's Order dated October 24, 2014 (Dkt. No. 754).

This Court ordered the EEOC to "file its proposed findings of fact and

conclusions of law by November 12, 2014," and the EEOC complied. (Dkt. Nos.

754, 765.)

To date, the Third Amended Complaint remains the operative

complaint. Thus, the Court notes that "[w]ith respect to the determination of

liability and the default judgment itself, the general rule is that well-pled

allegations in the complaint regarding liability are deemed true." *Fair Housing of*

*Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002).

## II.  **FINDINGS OF FACT**

A.  **This Court's Prior Findings of Fact Regarding Racial Animus and the Pattern or Practice of Discriminatory Conduct, Hostile Environment, and Retaliation by Global Horizons' Top Management Warrants Substantial Monetary Damages at the Statutory Cap for Each Claimant.**

1.      Global Horizons engaged in a pattern or practice of (1) hostile work

environment, (2) disparate treatment, and (3) retaliation against the Claimants.

(Dkt. 685; *EEOC v. Global Horizons, Inc.*, 7 F. Supp. 3d 1053 (D. Haw. 2014)).

5

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 8 of 82   Page ID #:10
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 6 of 77   PageID #:
23133

2.      Global Horizons' managing officials Sam Wongsesanit (Global Horizons' field supervisor), Shane Germann (Global Horizons' regional manager), and Joseph Knoller (Global Horizons' vice president) physically abused some of the Claimants. *Id.* at 1060.

3.      Wongsesanit and Germann "supervised Claimants" and "had immediate authority to discharge, discipline, and control work schedule, wages, and housing." *Id.*

4.      In 2004 at Defendant Maui Pineapple Company, Ltd. farm ("Maui Pineapple"), after Wongsesanit accused Claimant Anucha Homphet of helping a co-worker escape, he forced Homphet to meet with Knoller, and Knoller immediately slapped Homphet's head. *Id.*

5.      Wongsesanit broke the sunglasses off Claimant Prakran Radchai's face when Radchai forgot to bring his protective eyewear to work. *Id.* at 1060.

6.      In 2004 at Maui Pineapple, Wongsesanit grabbed one of the Claimants by the shirt and threw him against a wall. *Id.*

7.      Wongsesanit threatened Maui Pineapple Claimants with a gun and routinely carried a baseball bat during meetings and at the Claimants' housing facility to enforce the curfew. *Id.*

8.      Wongsesanit grabbed some of the Claimants by the throat during meetings, punched some of the Claimants in the face, pushed a Claimant who

6

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 9 of 82   Page ID #:11
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 7 of 77   PageID #:
23134

inquired about the lack of work hours, and hit a Claimant with a stick to make him work faster. *Id.*

9.   Global Horizons also admitted that its supervisors routinely verbally harassed Claimants. For example, Knoller told Claimants that anyone who ran away would be shot, deported, or arrested. Wongsesanit threatened Claimants with physical abuse and deportation. Wongsesanit, Pranee Tubchumpol (Global Horizons' director of international relations), and Germann routinely threatened Claimants that they would be deported if they did not work faster or harder, if they tried to escape, or if they complained about or questioned the working or living conditions. *Id.* at 1060-61.

10.   Global Horizons subjected the Claimants to physical and verbal harassment in that: Knoller, Tubchumpol, Germann, and Wongsesanit physically and verbally harassed the Claimants; Tubchumpol, Germann, and Wongsesanit had immediate supervisory authority over the Claimants; the harassment was their regular practice; the harassment was unwelcome; the Claimants perceived the work environment as abusive; and a reasonable person would find the work environment to be hostile or abusive. *Id.* at 1061.

11.   Global Horizons has admitted that Claimants complained to Global Horizons supervisors that they were treated worse than the non-Thai workers. *Id.* at 1061-62.

7

12.     Global Horizons has also admitted that it "ratified its Thai recruiters charging Claimants' excessive recruitment fees by ignoring Claimants' complaints about the fees because the debt from the fees kept Claimants more compliant and vulnerable to abuse." *Id.* at 1062.

13.     Global Horizons exploited the enormous debts the Claimants incurred to pay the recruitment fees. For example, Wongsesanit constantly threatened Claimants with deportation to Thailand or transfer to farms where they would earn less money because he knew that the Thai workers "were hopelessly in debt" because of the recruitment fees. *Id.*

14.     Global Horizons specifically chose Thai workers based on a stereotype that Thai workers would be more compliant and less likely to escape or cause other problems. *Id.*

15.     Global Horizons' Chief Executive Officer Mordechai Orian has admitted that he, "specifically sought Thai nationals to fulfill the farm labor contracts believing that Thai workers would be easier to exploit than workers from other national origins and/or races," and Global Horizons "selectively recruited impoverished, uneducated Thai workers who couldn't speak English, and had no family or contacts in the U.S. so they couldn't escape or question Global." *Id.*

16.     Orian believed that, in general, "Thai people, they are good people, nice people. And they just follow . . . ." Specifically, Orian believed that, as

8

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 11 of 82   Page ID #:13
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 9 of 77   PageID #:
23136

workers in the United States Department of Labor ("DOL") H–2A guest worker program, the Claimants would "just follow." *Id.*

17.     Orian previously hired workers from Mexico, China, and Nepal, but he had problems with those workers because they often disappeared. Orian stated that he believed that Claimants would not leave. *Id.*

18.     Orian has stated: "That's why we decide to go with Thailand, because the ration-ratio at that time of people who be absconded [sic] was 3 percent, 2 percent compared to 80 percent, 90 percent, 100 percent from other countries . . . ." *Id.*

19.     Orian also stated, "you just go to countries. You know it's going to be easier and they're going to stay on the job . . . That's why Thailand." *Id.*

20.     Global Horizons subjected the Claimants to physical and verbal harassment based on Claimants' race and/or national origin in order to secure the Claimants' compliance and obedience and based upon stereotypical beliefs about Thai workers. *Id.* at 1062-63.

21.     The harassment that the Claimants suffered was sufficiently severe and pervasive to alter the conditions of their employment. *Id.* at 1061.

22.     Global Horizons' supervisors engaged in a pattern or practice of hostile work environment by subjecting the Claimants to physical violence, threatening them with guns and bats, and verbally harassing them with threats of

9

shooting them or threats of physical violence, threats of arrest, threats to transfer them to farms with less or harsher work, threats of deportation if they did not work faster or harder, if they tried to escape, or if they complained about or questioned the working and/or living conditions. *Id.* at 1060-61.

23. Global Horizons treated the Claimants less favorably than other workers because of the Claimants' race and/or national origin. Further, the disparate treatment of Thai workers was Global Horizons' standard operating procedure in furtherance of the racial animus expressed by Global Horizons' CEO. *Id.* at 1065.

24. During Claimants' employment at Maui Pineapple, the Claimants "were prohibited from leaving the housing and work premises without Global [Horizons]'s permission, reading the Thai newspaper, and speaking to strangers/outsiders. Global [Horizons] also subjected [them] to a curfew and daily head count." *Id.* at 1063 (some alterations in original).

25. Once Global Horizons brought Claimants to the United States, their passports were immediately confiscated. *Id.* at 1064.

26. At Maui Pineapple, there was a high metal fence containing three layers of wire surrounding the Claimants' housing which made them a feel like prisoners. *Id.*

10

27.     Claimants also felt like prisoners because Global Horizons had ten security guards patrolling the area twenty-four hours a day. Tubchumpol and Germann told the workers that the security guards were immigration officials who would arrest any worker who tried to escape. *Id.*

28.     Global Horizons has admitted that "Micronesian and Filipino workers were not subjected to security measures, daily head counts/roll calls or held as a captive workforce." *Id.*

29.     Global Horizons has also admitted that it routinely denied Claimants breaks during the work day, but Micronesian and Filipino workers had two fifteen-minute breaks per day. *Id.*

30.     Global Horizons has also admitted that it imposed a work production quota on the Claimants at the Mac Farms of Hawaii, LLC farm ("Mac Farms"), but it did not impose work production goals on the Filipino workers. *Id.*

31.     Global Horizons demanded that the Claimants work faster than the non-Thai workers. *Id.*

32.     Global Horizons assigned Claimants to less desirable and more demeaning jobs at the various farms than the non-Thai workers, such as the Filipino workers. *Id.*

33.     Claimants were paid less than the non-Thai workers. *Id.* at 1065.

11

34.    Global Horizons failed to schedule the Claimants for the work hours it promised them, and routinely delayed payment or failed to pay Claimants for work they had already performed. *Id.* at 1064.

35.    While the Micronesian workers were allowed to own a car, drink alcohol, and listen to loud music during their free time, the Claimants were not allowed to do so. *Id.*

36.    Global Horizons required all Thai workers at Maui Pineapple to eat only in the cafeteria and prohibited them from cooking their own food. Further, although Global Horizons deducted weekly amounts from their paycheck for food, they did not provide adequate food to the Thai workers, and there were often food shortages for the Thai workers. The Thai workers' meals often consisted only of rice and a piece of pineapple or a hard-boiled egg. *Id.*

37.    The Micronesian workers received an adequate amount of food and better quality food. They were also allowed to cook their own food. *Id.*

38.    The Micronesian workers also did not have to share their sleeping quarters with as many other workers as the Thai workers did. *Id.*

39.    Global Horizons has admitted that the Claimants at Maui Pineapple complained that Global Horizons forced them to work harder than the non-Thai workers. *Id.* at 1066.

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 15 of 82   Page ID #:17
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 13 of 77   PageID #:
23140

40.     The EEOC also presented evidence that the Claimants at Maui
Pineapple also raised the issues of inadequate work hours, non-payment of wages,
unauthorized paycheck deductions, poor living conditions, and lack of sufficient
food. *Id.*

41.     Global Horizons has admitted that its supervisors, Wongsesanit,
Tubchumpol, and Germann, ignored or belittled the complaints at Maui Pineapple.
*Id.*

42.     Global Horizons also admitted that its supervisors responded to these
complaints by threatening Claimants with deportation, by challenging them to
fights, and by using physical force. *Id.* at 1067.

43.     Global Horizons further admitted that, when the DOL investigated
Global Horizons at Maui Pineapple, Wongsesanit and Tubchumpol told Claimants
either to refuse to talk to the investigators or to lie about Claimants' compensation
problems. *Id.*

44.     Claimant Pengbunma was one of the workers who the investigators
spoke to. He stated that, when he started to tell the investigators about not being
assigned enough work and about the living conditions, Wongsesanit ordered the
investigators to leave and ordered Pengbunma and the other workers to stop talking
and return to the dormitory. Wongsesanit later threatened them with deportation if
they spoke with any government officials again. *Id.*

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 16 of 82   Page ID #:18
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 14 of 77   PageID #:
23141

45.     As to the Claimants at the Del Monte Fresh Produce (Hawaii) farm ("Del Monte"), Global Horizons admits that they complained to Global Horizons supervisors about not being assigned enough work hours and about payment delays. *Id.*

46.     The Del Monte Claimants also raised those complaints, as well as complaints about the exorbitant recruiting fees they paid, to the DOL. In response to the internal complaints, the Global Horizons supervisors threatened to deport the workers who complained or to transfer them to farms where they would work less and be paid less. When Global Horizons learned about the complaints to the DOL and that the Del Monte Claimants were cooperating in the DOL's investigation, Tubchumpol told them that they were not to talk to anyone from the federal agency and that anyone who did so would be deported. *Id.*

47.     As to the Claimants at Mac Farms, Global Horizons admits that they complained to Global Horizons supervisors about payment issues, not having enough water, uninhabitable living conditions, and having to pay for transportation to the grocery store. *Id.*

48.     In response, Global Horizons supervisors threatened the Mac Farms Claimants with deportation and told them not to tell anyone about their problems. Wongsesanit also refused to transport any of the Mac Farms Claimants to the grocery store unless they paid him. *Id.*

14

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 17 of 82   Page ID #:19
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 15 of 77   PageID #:
23142

49.    As to the Claimants at the Captain Cook Coffee Company, Ltd. farm ("Captain Cook"), Global Horizons admits that they complained about payment issues, being forced to work under difficult conditions, and being forced to work when they were sick. After two Claimants at Captain Cook made such complaints, Tubchumpol transferred them to other farms. *Id.*

50.    As to the Claimants at the Kelena Farms, Inc. farm ("Kelena Farms"), Global Horizons admits that they complained to both Global Horizons supervisors and the farm itself about the recruitment fees and about not being paid for work performed. *Id.*

51.    Tubchumpol met with the Kelena Farms Claimants, but merely told them to stop complaining. *Id.*

52.    Global Horizons engaged in a pattern and practice of retaliating against any and all Claimants who complained about or resisted discriminatory treatment, and against any and all Claimants who participated in governmental investigations of their complaints of discrimination. *Id.* at 1066-69.

53.    Global Horizons' supervisors confined Claimants with curfews, bedtimes, and security guards; restricted their movements and contact with outsiders; denied them food, housing, transportation, and medical care for work related injuries. *Id.* at 1061.

15

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 18 of 82   Page ID #:20
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 16 of 77   PageID #:
23143

54.     Global Horizons' supervisors also subjected the Claimants to a pattern
or practice of discriminatory terms and conditions by confiscating their passports,
imposing security measures to hold them captive, prohibiting them from leaving
the housing and work premises without Global Horizons' permission, prohibiting
them from speaking to strangers/outsiders, subjecting them to curfews and daily
head counts, while the non-Thai workers were not subjected to the same. *Id.* at
1064.

55.     Global Horizons' supervisors denied the Claimants breaks while
giving the non-Thai workers breaks during the work day, imposed production
quotas/goals on the Claimants but not to the non-Thai workers, demanded that the
Claimants work faster than the non-Thai workers, assigned the Claimants to less
desirable and more demeaning jobs than the non-Thai workers, paid the Claimants
less than the non-Thai workers, failed to schedule the Claimants for work hours it
promised them while scheduling the non-Thai workers for more work hours, and
routinely delayed payment or failed to pay the Claimants for work that they had
already performed while not depriving the non-Thai workers of their wages. *Id.*

56.     Global Horizons' supervisors engaged in a pattern or practice of
discriminatory treatment by allowing the non-Thai workers to own a car, drink
alcohol, and listen to loud music during their free time but not allowing the
Claimants to do the same; requiring all Claimants to eat only in the cafeteria and

16

Case 2:18-mc-00122-UA  Document 1-1  Filed 09/12/18  Page 19 of 82  Page ID #:21
Case 1:11-cv-00257-LEK-RLP  Document 767  Filed 12/19/14  Page 17 of 77  PageID #:
23144

prohibiting them from cooking their own food; deducting weekly wages amounts from their paycheck for food and not providing adequate food to the Claimants while the non-Thai workers were allowed to cook their own food and the non-Thai workers received an adequate amount of food and better quality of food. *Id.*

57.    Global Horizons' standard operating procedure was to treat Claimants less favorably than non-Thai workers and to retaliate against Claimants who complained about discrimination. *Id.* at 1065, 1069.

**B.**    **Maui Pineapple Controlled the Terms and Conditions of the Claimants' Employment but Demonstrated Reckless Indifference to the Claimants' Rights under Title VII.**

58.    Maui Pineapple and Global Horizons entered into two contracts by which Maui Pineapple controlled the Claimants day to day existence while working at Maui Pineapple. (Dkt. No. 263 at ¶434.)  The first contract, dated June 2004, defined Maui Pineapple as the employer and strictly limited Global Horizons' role to that of a "Personnel Services" provider for all of Maui Pineapple's farm workers, including both their domestic workers and the Claimants.  (*Id.*; Ex104.)

59.    As the "Personnel Services" provider, the first contract limited Global Horizons' duties to processing I-9, W-4, and other tax forms, and providing workers' compensation insurance.  (Dkt. No. 263 at ¶436; Ex1#489; Ex104.)

17

60.     Maui Pineapple's contract with Global Horizons allowed Maui Pineapple to terminate the Claimants' employment "at any time and for any reason," and made Maui Pineapple responsible for providing a safe working environment in accordance with all applicable federal laws. (Dkt. No. 263 at ¶436; Ex1#s 487-88, Ex104.)

61.     After securing this initial contract with Maui Pineapple, Global Horizons submitted an Application for Alien Employment Certification to the DOL to provide temporary workers (i.e. the Claimants) to harvest pineapples for Maui Pineapple through the H2-A visa program. (Dkt. No. 263 at ¶437; Ex1#s 490-91; Ex115; Ex116.)

62.     On October 21, 2004, DOL approved Global Horizons' application to supply 100 workers to Maui Pineapple from November 13, 2004 through September 15, 2005. (Ex1#492; Ex117.)

63.     Maui Pineapple and Global Horizons had the Claimants start working at Maui Pineapple prior to November 13, 2004, without DOL's approval. As stated above, DOL granted certification for the Claimants to start work at Maui Pineapple on November 13, 2004. (Ex117.)

64.     Global Horizons and Maui Pineapple's payroll confirms that the H-2A (Thai) workers worked at Maui Pineapple prior to November 13, 2004, for the pay periods ending: 10/16/04; 10/23/04; 10/30/04; 11/6/04; and 11/13/04. (Ex113.)

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 21 of 82   Page ID #:23
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 19 of 77   PageID #:
23146

65.   On or about November 15, 2004, after DOL's approval, Maui

Pineapple and Global Horizons entered into a subsequent contract that attempted to

redefine Global Horizons as the Claimants' employer.  (Ex105.)

66.   Maui Pineapple continued to retain tight control over the terms and

conditions of the Claimants' work environment.  (*Id.*)

67.   Maui Pineapple's second contract with Global Horizons, with a fax

date of November 15, 2004, was not in existence when Global Horizons submitted

its application to DOL to provide workers to Maui Pineapple.  Nor was it subjected

to review and consideration by DOL when DOL issued the certification for Global

Horizons to supply 100 workers to Maui Pineapple on October 21, 2004.  (Ex1#s

482,486,492-94,627.)

68.   Under both contracts, Global Horizons and Maui Pineapple jointly:

controlled the Claimants' work, housing, transportation, and access to food;

supervised the Claimants; determined the pay rates or the methods of payment;

held the right, directly or indirectly, to hire, fire, or modify the employment

conditions of the workers; and participated in the preparation of payroll and the

payment of wages.  (Ex1#s 487-90,492,494-95; Exs104-05.)

69.   Both contracts also repeatedly defined Global Horizons' fundamental

role as limited to preparing payroll paperwork, contrasted with Maui Pineapple's

control over the worksite.  (Exs104-05.)

19

      1.     **Maui Pineapple was recklessly indifferent to the Claimants' Title VII rights despite its tight and total control over the Claimants' work.**

70.    Maui Pineapple maintained on-the-job control over Claimants through Global Horizons, and Global Horizons' on-site crew leaders who spoke directly to the Claimants.  (Ex19,¶60; Ex46,¶49.)

71.    Maui Pineapple set the Claimants' schedule, hours, and assign them their jobs were for that day.  (Dkt. No. 263 at ¶442; Ex106: 27:8-28:23; Ex107: 39:16-40:4, 42:3-19; Ex108: 74:2-77:7.)

72.    Maui Pineapple made Global Horizons' supervisors report to Maui Pineapple's supervisors.  (Ex106: 39:26 – 40:6.)

73.    Maui Pineapple determined how many Claimants they needed.  (Dkt. No. 263 at ¶444; Ex108: 43:6-44:10.)

74.    Maui Pineapple trained the Claimants on how to do the work in the field.  (Dkt. No. 263 at ¶¶447, 451; Ex106: 31:19-22; Ex107: 29:2-5, 30:4-16; Ex108: 45:9-21.)

75.    Maui Pineapple trained Global Horizons' supervisors.  (Dkt. No. 263 at ¶¶446, 450; Ex106: 31:19, 22; 45:6-16; Ex107: 30:4-8; Ex108: 43:3, 14, 16, 24, 45:9-14; 75:22-24; Ex112#s 90-91.)

76.    Maui Pineapple kept a map in their office of where the Claimants were working.  (Dkt. No. 263 at ¶444; Ex 106: 46:10-49:12.)

77.     Maui Pineapple provided the equipment and tools (i.e. hoes, knives, gloves, and chaps) to the Claimants.  (Dkt. No. 263 at ¶¶443, 450; Ex106: 37:24-38:11; Ex107: 76:14-19; Ex109: 146:22-25; Ex112#s 97-98, 123-24.)

78.     Maui Pineapple gave daily orders on what fruit to pick and the specific amount of land to be covered.  (Ex110: 61:23-62:3; Ex106: 39:22-40:6.)

79.     Maui Pineapple evaluated the Claimants' work multiple times each day.  (Dkt. No. 263 at ¶447; Ex108: 46:4-25; 76:2-4.)

80.     Maui Pineapple received daily reports about work completed by the Claimants.  (Ex106: 43:23-44:19.)

81.     Maui Pineapple verified the Claimants' payroll.  (Dkt. No. 263 at ¶444; Ex106: 48:24; 49:9-16; 50:16.)

## 2. Maui Pineapple was recklessly indifferent to the Claimants' Title VII rights despite its control over the Claimants' housing and food.

82.     Maui Pineapple controlled the Claimants' housing and access to food. (Dkt. No. 263 at ¶¶445, 448; Ex109: 93:10-18; Ex112#86.)

83.     Maui Pineapple supplied the mattresses, bed-frames, sheets, kitchen and kitchen equipment to the Claimants.  (Dkt. No. 263 at ¶449; Ex112#s 108-09,111-12.)

21

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 24 of 82   Page ID #:26
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 22 of 77   PageID #:
23149

84.     Maui Pineapple provided the housing on Maui Pineapple's land for
the Claimants.  (Dkt. No. 263 at ¶452; Ex 9: 59:8-18; 60:6-18; Ex106: 33:7-19;
Ex108: 49:8-17; Ex109: 78:19-79:14; Ex112#s 53-54,132-33,188.)

### 3.     Maui Pineapple sought a more docile workforce in the Thai Claimants compared to its Micronesian workers.

85.     Maui Pineapple targeted the Claimants based on stereotypes they were
easier to exploit since Maui Pineapple's Dormitory Manager Patty Corden
("Corden"), (Ex9: 27:9-16,) confirmed that Maui Pineapple was looking for a
different workforce because Micronesian workers had problems with their
attendance and "sometimes they get out of hand, fighting . . . ." (*Id.* at 103:19-
104:23.)  Thus, Maui Pineapple hired Thai workers instead because "[t]hey work
really hard.  They don't make trouble . . . , and they - their attendance, they come
to work. . . .  I didn't have problems I had sometimes with the Micronesians." (*Id.*
at 132:20-133:3.)

### 4.     Maui Pineapple was recklessly indifferent to the confinement, verbal abuse, threats, and restrictions on the Claimants.

86.     Maui Pineapple was recklessly indifferent to Global Horizons'
physical assaults/ abuse on the Claimants, threats, verbal abuse, confinement,  and
restrictions on the Claimants' personal liberties, movements, and/or interactions
with outsiders since all of this occurred at their work site and Maui Pineapple
provided the housing on their land for the Claimants (Dkt. No. 263 at ¶452; Ex9:

22

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 25 of 82   Page ID #:27
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 23 of 77   PageID #:
23150

59:8-18; 60:6-18; Ex106: 33:7-19; Ex108: 49:8-17; Ex109: 78:19-79:14; Ex112#s
53-54,132-33,188.)  At Maui Pineapple, Global Horizons' supervisors (1) slapped
Claimants; (2) beat up Claimants; (3) grabbed a Claimant by his shirt and threw
him against a wall; (5) grabbed Claimants by the throat at meetings; and
(5) challenged Claimants to fight for innocuous acts such as asking questions
and/or asking about getting more work.  (Ex1#s 134,566,568-74; Ex2#s
1086,1089-93,1146,1181; Ex15,¶38; Ex17,¶26; Ex18,¶¶26,27; Ex19,¶¶49-50;
Ex22,¶¶20-22; Ex26,¶37; Ex28,¶36; Ex31,¶10; Ex32,¶21; Ex40,¶¶5,17,18;
Ex43,¶¶13-14; Ex45,¶17; Ex47,¶13; Ex56,¶17; Ex61,¶¶31-32; Ex62,¶39.)  Maui
Pineapple was recklessly indifferent to the fact that Global Horizons enhanced
measures to confine the Claimants at Maui Pineapple by (1) posting a security
detail around the housing; (2) surrounding the housing with yellow tape and bells;
and (3) using metal fencing with three layers of wire around the housing to prevent
escape.  (Ex1#s 140,550-51,625,626,642; Ex2#s 1095-97; Ex15,¶34; Ex28,¶19;
Ex29,¶8; Ex34,¶34; Ex35,¶¶25,29; Ex38,¶8; Ex39,¶6 at p.5; Ex41,¶¶8,31;
Ex43,¶9; Ex44,¶8; Ex46,¶¶40,46; Ex59,¶¶37,46.)  These
restrictions/curfews/headcounts were inapplicable to non-Thais.  (Ex2#1159;
Ex26,¶28; Ex31,¶17; Ex34,¶10.)

23

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 26 of 82   Page ID #:28
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 24 of 77   PageID #:
23151

> **5.** **Maui Pineapple was recklessly indifferent to the Claimants'
> Title VII rights in that it denied Claimants habitable
> accommodations and provided Non-Thai workers with
> better accommodations.**

87.     The Claimants were housed in dormitories provided by Maui

Pineapple on property owned by Maui Pineapple but Maui Pineapple was

recklessly indifferent to the possibility that it or Global Horizons was violating the

Claimants' Title VII rights.  (Dkt. No. 263 at ¶ 452; Ex1#s 495; Ex106: 33:7-19;

Ex108: 49:8-17; Ex109: 78:19-79:14; Ex9: 59:8-18; 60:6-18; Ex112#s 53-54,132-

33,188.)

88.     The Claimants described Maui Pineapple's housing as the worst

housing.  (Ex1#s 285,518, 629; Ex2#s 969,986,1052-55,1082; Ex28,¶47;

Ex37,¶17.)

89.     Non-Thai workers lived in better conditions at Maui Pineapple

because each facility was segregated allowing fewer Micronesians per room, while

at Maui Pineapple Claimants slept anywhere there was any space, ranging from 8-

100 Claimants in the barracks.  (Dkt. No. 263 at ¶¶459-63; Ex1#s 519-20,523,525;

Ex2#s 1074-75; Ex15,¶30; Ex17,¶¶20,23; Ex18,¶¶43,44; Ex19,¶42; Ex20,¶¶13-14;

Ex21,¶¶29-31; Ex22,¶23; Ex23,¶9; Ex24,¶¶9-10; Ex25,¶25; Ex26,¶31; Ex28,¶22;

Ex29,¶10; Ex30,¶¶21-22; Ex31,¶¶11,15; Ex32,¶¶10,20; Ex33,¶35; Ex35,¶¶30-

32,34; Ex36,¶¶15,18; Ex37,¶¶15-16; Ex38,¶10; Ex39,¶9 at p.6; Ex40,¶13;

Ex41,¶28; Ex42,¶22; Ex43,¶¶11,47-48; Ex44,¶¶10-11; Ex46,¶32; Ex47,¶10;

24

Case 2:18-mc-00122-UA Document 1-1 Filed 09/12/18 Page 27 of 82 Page ID #:29
Case 1:11-cv-00257-LEK-RLP Document 767 Filed 12/19/14 Page 25 of 77 PageID #:
23152

Ex48,¶¶10,11; Ex50,¶12; Ex52,¶¶19-20; Ex53,¶19; Ex55,¶12; Ex56,¶14;

Ex57,¶20; Ex58,¶16; Ex59,¶¶43-45; Ex 61,¶¶34-35.)

90.   Maui Pineapple did not provide enough beds to the Claimants, leaving

some to sleep on the floor. (Dkt. No. 263 at ¶445; Ex1#s 512-13; Ex2#1155;

Ex18,¶43; Ex26,¶31; Ex28,¶22; Ex35,¶31; Ex40,¶13; Ex42,¶22; Ex46,¶32;

Ex47,¶10; Ex53,¶20; Ex59,¶¶43-44.)

91.   Micronesian workers lived in better housing separate from the

Claimants that were less crowded than the Claimants' housing at Maui Pineapple.

(Dkt. No. 263 at ¶462; Ex1#520; Ex2#s 1074-75; Ex17,¶23; Ex31,¶¶15,16;

Ex35,¶34; Ex36,¶18; Ex37,¶16; Ex42,¶29; Ex44,¶11; Ex53,¶26; Ex55,¶12;

Ex56,¶14; Ex59,¶45.)

92.   There were three times as many Claimants as Micronesians, yet there

were the same number of bathroom facilities on both sides. (Ex9: 121:4-122:3.)

93.   Claimants had to wait in long lines to use the few showers and toilets

on the Thai side of the building because they were forbidden from using the

Micronesians' bathrooms at the Maui Pineapple housing. (Ex1#525; Ex29,¶10;

Ex34,¶¶13-14; Ex35,¶34; Ex36,¶¶16-17; Ex39,¶9 at p.6; Ex43,¶11; Ex46,¶37.)

The Claimants urinated/defecated outside in the bushes because the insufficient

toilets routinely malfunctioned at Maui Pineapple. (Ex2#s 1058-64; Ex19,¶43;

Ex33,¶35; Ex34,¶13; Ex48,¶¶10,11.)

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 28 of 82   Page ID #:30
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 26 of 77   PageID #:
23153

94.    The Claimants' housing at Maui Pineapple had no air conditioning
and no heat.  (Ex9: 79:2-3; Ex109: 90:8-24.)

95.    At the Maui Pineapple housing, which was infested with rats and
various bugs, Claimant Saran Nonanthi suffered a scorpion bite; and there were no
electric fans to dissipate the smell of Claimants in the cramped quarters which
lacked hot water for bathing in the open communal showers denied privacy.
(Ex1#s 515-18, 595; Ex2#s 1068-73; Ex16,¶9; Ex17,¶21; Ex19,¶43; Ex20,¶14;
Ex21,¶37; Ex23,¶9; Ex26,¶¶31-32; Ex28,¶22; Ex29,¶10; Ex31,¶11; Ex32,¶¶10,20;
Ex33,¶36; Ex34,¶¶13,34; Ex35,¶¶30-31; Ex36,¶16; Ex38,¶¶10,31; Ex39,¶9 at p.6;
Ex41,¶¶28-29,32-33; Ex42,¶22; Ex43,¶¶11,47-48; Ex44,¶¶10-11; Ex46,¶¶33,35-
36,47; Ex47,¶10; Ex48,¶¶10,11; Ex53,¶19; Ex59,¶¶43-44; Ex61,¶34.)

> **6.    <u>Maui Pineapple was recklessly indifferent to the Claimants
> rights in that they were entitled to food under the H-2A
> program, but Maui Pineapple never ensured sufficient
> quantities for the large number of Claimants living at its
> dormitories.</u>**

96.    Maui Pineapple controlled the Claimants' access to food by ordering
the food for the Claimants.  (Dkt. No. 263 at ¶¶445, 448; Ex9: 72:14-73:23; Ex107:
80:11-81:3, 81:22-25; Ex109: 92:16-22.)

97.    The Claimants were not provide enough food at Maui Pineapple in
that a typical meal was rice with a slice of pineapple, two hard boiled eggs, or a
few pieces of bacon/jerky.  (Ex2#s 1138,1150; Ex16,¶10; Ex19,¶45; Ex22,¶24;

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 29 of 82   Page ID #:31
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 27 of 77   PageID #:
23154

Ex23,¶10; Ex28,¶24; Ex30,¶23; Ex33,¶38; Ex36,¶20; Ex46,¶34; Ex52,¶20;
Ex57,¶22.)

98.    Claimants waited in long lines to eat and food ran out for those at the
end of the line at Maui Pineapple. (Ex1#s 590,592; Ex2#s 1139-41; Ex53,¶21.)
Claimants also lacked adequate food supplies at Maui Pineapple. (Ex1#s 88-89,
299, 341, 377, 383, 404, 457, 686; Ex2#s 768,993-95.)  The Micronesians,
however, had more food and better food to cook with than the Claimants at Maui
Pineapple. (Ex1#521; Ex2#s 1147-49; Ex17,¶22; Ex 25,¶¶27,29; Ex31,¶16;
Ex34,¶33; Ex44,¶13; Ex60,¶22.)

99.    Maui Pineapple and Global Horizons prohibited the Claimants from
cooking their own meals or eating any food outside the cafeteria at Maui Pineapple
and Global Horizons seized rice cookers, pots and pans, electric burners, spices,
utensils, and instant noodles Claimant bought for themselves while working at
other farms. (Ex1#s 506,523,596-99; Ex2#s 1107-19,1120-22,1133-35;
Ex17,¶¶54-55; Ex18,¶40; Ex19,¶45; Ex21,¶¶32,47; Ex22,¶¶24-25,37; Ex23,¶¶10-
12; Ex25,¶28; Ex28,¶¶23-24; Ex29,¶11; Ex30,¶23; Ex31,¶¶12,13,16; Ex32,¶¶11,
24; Ex33,¶38; Ex34,¶16; Ex35,¶35; Ex38,¶11; Ex39,¶10 at p.6; Ex40,¶14;
Ex41,¶10; Ex43,¶12; Ex44,¶¶12-13; Ex45,¶13; Ex46,¶34; Ex47,¶11; Ex48,¶12;
Ex50,¶16; Ex52,¶21; Ex53,¶21; Ex55,¶12; Ex57,¶22; Ex58,¶16; Ex59,¶48;
Ex60,¶22; Ex62,¶¶33-34,36; and Ex114.)

27

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 30 of 82   Page ID #:32
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 28 of 77   PageID #:
23155

100.   Because Maui Pineapple provided the Claimants with food/meals and prohibited them from eating meals outside of those provided, Maui Pineapple controlled what/when/where they ate.  (Ex1#s 593,596-98; Ex109: 93:10-16; Ex114.)

   **7.    Maui Pineapple was recklessly indifferent to Global
           Horizons' pattern or practice of disparate treatment since it
           controlled the Claimants' work site.**

101.   Non-Thai workers had better working conditions than the Claimants. (Ex15,¶23; Ex52,¶33.)  At Maui Pineapple, Global Horizons denied work breaks to the Thai workers, while the Filipino and Micronesian workers got two, 15-minute breaks/day.  (Dkt. No. 263 at ¶467;Ex1#s 531-32,540; Ex16,¶17; Ex29,¶15; Ex31,¶18.)  Micronesian workers worked at a slower pace while Global Horizons supervisor Wongsesanit reprimanded Claimants who worked at the same pace. (Dkt. No. 263 at ¶467;Ex1#534; Ex30,¶25; Ex35,¶45; Ex36,¶11; Ex59,¶50.) Whenever Maui Pineapple's Filipino truck drivers felt Claimants were working too slowly, they drove the trucks faster and thereby forced the Claimants to work faster to keep up.  (Ex28,¶26; Ex59,¶50.)

102.   Claimants got less desirable and demeaning job assignments at Maui Pineapple.  While Claimants physically harvested pineapples, Filipino workers performed easier jobs like driving, indoor packing, planting pineapple plants, and cutting stems from fruits.  (Ex1#537; Ex2#s 1152-54; Ex15,¶37; Ex19,¶61;

28

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 31 of 82   Page ID #:33
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 29 of 77   PageID #:
23156

Ex20,¶9; Ex28,¶¶25,28; Ex30,¶25; Ex31,¶19; Ex35,¶44; Ex44,¶14; Ex50,¶15;

Ex53,¶26; Ex55,¶14; Ex58,¶17; Ex59,¶50.)

103.   Claimants worked in thornier pineapple fields while non-Thai workers

worked in the less thorny fields. (Dkt. No. 263 at ¶469; Ex1#s 536,538; Ex2#s

1160-62; Ex59,¶50.) Claimants harvested more pineapples than non-Thai workers

during the same time period. (Dkt. No. 263 at ¶470; Ex1#539.)

104.   Filipino workers were paid $15.00 per hour while the Claimants were

paid $9.75 per hour at Maui Pineapple. (Dkt. No. 263 at ¶468; Ex18,¶35.)

105.   Non-Thais at Maui Pineapple were scheduled more work hours than

the Claimants and were never subjected to non-payment of wages. (Ex1#s

262,333,359,582; Ex2#s 732,926,991; Ex23,¶13; Ex29,¶16; Ex31,¶20; Ex61,¶39.)

106.   The Claimants were denied access to restrooms, drinking water, hand

washing facilities, and medical care at the worksite(s) while working at Maui

Pineapple. (Ex2#s 733-35,823-24,1050-51,1080,1082; Ex19 ,¶58; Ex59,¶51.)

107.   Maui Pineapple and Global Horizons had four Claimants, including

Claimant Charat Khumphon, work as cooks at Maui Pineapple's dormitories, and

did not pay them the market rate for that job which was determined by DOL at the

time, and failed to pay them overtime. (Ex25,¶¶22,30.) Corden was the manager

in charge of the housing and kitchen, and her knowledge of these cooks' hours is

imputed to Maui Pineapple because she is a manager. (Ex66.) Maui Pineapple

through Global Horizons represented to DOL that the Claimants would be harvesting pineapples and not working as cooks. (Exs116-117.)

> ### 8. Maui Pineapple engaged in direct retaliation against the Claimant when it denied work to Claimants shortly after they complained about unpaid wages, lack of food, and lack of work.

108. Maui Pineapple engaged in direct retaliation against the Claimant when it denied work to Claimants shortly after they complained about unpaid wages, lack of food, and lack of work to DOL in May 2005 even though Maui Pineapple had a need for H2-A workers which was demonstrated by their multiple letters of intent to contract with Global Horizons for more H2-A workers. (Dkt. No. 263 at ¶¶489-96; Ex26,¶39; Ex28,¶37; Ex42,¶32.)

109. Holly Ka'Akimaka, Director of Industrial Relations for Maui Land & Pineapple Company, confirmed that DOL investigated Maui Pineapple in 2005. (Dkt. No. 263 at ¶489; Ex109: 49:7-23, 84:25-87:14, 121:20-123:2.)

110. The Claimants participated in DOL's investigation by complaining about unpaid wages, lack of food, and lack of work. Maui Pineapple again refused to conduct its own investigation after DOL appeared. (Dkt. No. 263 at ¶489; Ex109: 124:23-25.)

111. On July 27, 2005, Maui Pineapple sent a letter of intent to further contract with Global Horizons for up to 60 workers to work from September 16,

2005 to January 1, 2006 or October 8, 2005 to August 8, 2006. (Ex115.[1]) Global

Horizons then filed an Application for Labor Certification and Agricultural Food

Processing Clearance Order on or about August 22, 2005, for sixty (60) H2-A

workers to provide pineapple harvesting services from October 8, 2005 through

August 8, 2006. (Dkt. No. 263 at ¶491; Ex118.)

112.   Then, on or about August 26, 2005, Maui Pineapple sent another letter

revising the July 27, 2005 letter of intent by extending the contract period from

September 16, 2005 to August 8, 2006, and sent another letter of intent for up to 25

workers to work for the period October 8, 2005 to August 8, 2006. (Ex115.) Thus,

Global Horizons filed another Application for Labor Certification and Agricultural

Food Processing Clearance Order on or about August 26, 2005, for eighty-five (85)

H2-A workers to provide pineapple harvesting services from October 13, 2005

through August 8, 2006. (Ex119.)

113.   On September 8, 2005, Maui Pineapple once again sent a letter of

intent to contract with Global Horizons for up to 85 workers to work for the period

November 15, 2005 to September 15, 2006. (Ex115.) But on or about

---

[1] Exhibit 115 contains two versions of the July 27, 2005 letter - one with the dates September 16, 2005 to January 1, 2006, and another with those dates crossed out and replaced with handwritten dates, October 8, 2005 to August 8, 2005. Presumably the August 8, 2005 refers to August 8, 2006.

31

Case 2:18-mc-00122-UA    Document 1-1    Filed 09/12/18    Page 34 of 82    Page ID #:36
Case 1:11-cv-00257-LEK-RLP    Document 767    Filed 12/19/14    Page 32 of 77    PageID #:
23159

September 12, 2005, Maui Pineapple requested that Global Horizons withdraw the

two applications for the additional H2-A workers.  (Dkt. No. 263 at ¶492; Exs120-

21.)

114.    Maui Pineapple engaged in adverse employment actions by denying

the Claimants work after mid-August 2005 despite receiving DOL's approval for

the Claimants to work there through September 15, 2005, and despite having

multiple letters of intent for Global Horizons to provide additional Thai workers to

work from September/November 2005 to August/September 2006.  (Dkt. No. 263

at ¶¶494-96; Ex26,¶39; Ex28,¶37; Ex42,¶32; Ex109: 117:24-121:11; Ex112#s 3-4,

147, 343, 346, 349, 352, 355, 358-59, 361, 364, 367, 370-71, 373, 376, 382, 385,

388, 391, 394, 400-01, 403, 406, 409, 412, 415, 418, 421, 424, 427, 430-31, 433,

439, 442-43, 445-46, 448, 451, 454, 457, 460, 463, 466, 469, 472, 475, 478, 481,

484-85; Ex115, Maui Pineapple's "Letters of Intent" to contract with Global

Horizons dated 7/27/05 and 8/26/05.)

### 9.    Maui Pineapple was recklessly indifferent to the Claimants rights by failing to protect them from Global Horizons' Pattern or Practice of Discrimination.

115.    Maui Pineapple was recklessly indifferent to the Claimants' rights

since it had equal opportunity policies in place but it failed to apply such policies

to protect the Claimants from Global Horizons' pattern or practice of

discrimination.  (Ex9: 38:23-39:15; Ex108: 58:4-16; Ex109: 55:22-56:7; Ex110:

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 35 of 82   Page ID #:37
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 33 of 77   PageID #:
23160

71:5-22; Ex111: 47:6-49:13.)  Maui Pineapple also provided training to its

supervisors regarding EEO policies.  (Ex9: 44:9-45:2; Ex106: 59:1-24, 62:1-16;

Ex108: 59:13-17; Ex109: 62:20-64:19; Ex110: 73:19-74:25, 75:15-23.)  Despite

having EEO policies and trainings, and knowing Claimants were running away

from its facility, Maui Pineapple's supervisors (Balala, Corden, Serrato, Kai) did

not take any investigative, preventative, or corrective measures to stop the hostile

work environment and other discriminatory treatment that made Claimants run

away.  (Dkt. No. 263 at ¶455; Ex9: 98:24-99:5, 100:9-101:1; Ex106: 41:6-21;

Ex108: 74:2-77:7; Ex109: 100:23-102:5; Ex112#s 153,157-62,166-67.)

116.    Maui Pineapple was also recklessly indifferent to the Claimants'

rights in that it knew the Claimants were transported in overcrowded and/or unsafe

buses/vans.  (Ex106: 35:16-23; Ex107: 42:12-19; Ex109: 95:6-14.)  Maui

Pineapple also knew that DOL found violations in May or June 2005, including

Global Horizons' failure to maintain proper auto insurance for the van used to the

transport the Claimants.  (Dkt. No. 263 at ¶453; Ex112#s 142-44.)

117.    Maui Pineapple's drivers saw that Claimants fainting in the fields

because it happened in front of them.  (Ex19,¶58.)

**C.**     **All Claimants Suffered Pain and Suffering from Global Horizons'**
**and/or Maui Pineapple's Pattern or Practice of Perpetuating a Hostile**
**Work Environment, Disparate Treatment, and Retaliation.**

118.    Based on the overall allegations of the Third Amended Complaint and

the EEOC's exhibits filed on November 4, 2014, pursuant to this Court's Order

(Dkt. No.754), the Court finds as true the fact that all Claimants suffered similar

pain and suffering with respect to their employment in Hawaii with Global

Horizons and/or Maui Pineapple.

119.    The following 82 Claimants were brought to work in Hawaii by

Global Horizons and the EEOC submitted trial exhibits including these Claimants'

declarations and testimony from other witnesses to support their claim for damages

(Dkt. Nos. 755-64):

| | |
|---|---|
| 1. | Amnat Phonai |
| 2. | Amnuay Phiansing |
| 3. | Amphon Kanthawang |
| 4. | Aniwat Khadphab |
| 5. | Anucha Homphet |
| 6. | Aphiwat Phaisantham |
| 7. | Apichart Peayer |
| 8. | Aran Saengvan |
| 9. | Arun Nakhwan |
| 10. | Arwuth Lainok |
| 11. | Athip Wongsanao |
| 12. | Boonlue Khadkantha |
| 13. | Boonthiam Wonghamlve |
| 14. | Bunhom Philuk |
| 15. | Bunthai Sareewong |
| 16. | Bunthiang Surivong |
| 17. | Bunyarit Pengbunma |
| 18. | Chaiwijit Munwaree |

34

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 37 of 82   Page ID #:39
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 35 of 77   PageID #:
23162

19.  Chakkrapong Khongkhao
20.  Charat Khumphon
21.  Chit Intip
22.  Chukiat Chamnansarn
23.  Dechachok Pamueangmun
24.  Duang Kakaew
25.  Itthi Oa-Sot
26.  Jakarin Phookhiew
27.  Kasem Puangkham
28.  Khamjuan Namwichai
29.  Khomkrit Aksorn
30.  Kittipong Phetpanya
31.  Krittanai Intakaeo
32.  Liam Kajai
33.  Monghonsak Thanakhun
34.  Narong Duangdet
35.  Natthankan Chinnawan
36.  Natthawat Yahuafai
37.  Nikon Nasaeng
38.  Nirun Ruanjai
39.  Nookrai Matwiset
40.  Nophadon Seechachet
41.  Nopphon Fuchompa
42.  Patiphan Homon
43.  Phichet Phanthasri
44.  Phiphop Khamkaeo
45.  Phirom Krinsoongoen
46.  Phuchit Laoelit
47.  Prachon Ratanarak
48.  Pradit Yimsangob
49.  Praiwan Thongbai
50.  Prajuab Champar
51.  Prakran Radchai
52.  Praphan Lomajan
53.  Prasoet Nomrawi
54.  Prawit Kaepon
55.  Ratthapon Yapunya
56.  Saharat Prasertsang
57.  Saiam Rodphan
58.  Saiphan Mornkaew

35

59. Sakda Phaisanwatthanakan
60. Samrit Korpimai
61. Sane Tanangoy
62. Sarakham Lunlan
63. Saran Nonanthi
64. Sathit Viboonkul
65. Soem Sitthiwang
66. Sombat Paengmuang
67. Somboon Meesri
68. Somjai Phobai
69. Somkhid Ud-Kon
70. Somkhit Nasee
71. Somphong Suebphang
72. Sompong Seesuk
73. Somsak Wongkaeo
74. Sopha Khaosa
75. Sriwan Phujai
76. Suthat Promnonsri
77. Sutthichai Makhai
78. Thanawat Chak Ano
79. Thawat Maitham
80. Thinnakorn Thongkham
81. Uthen Wongjinda
82. Weeraphan Panyasen

120. The following 54 Claimants Global Horizons brought to Hawaii and worked at Maui Pineapple and the EEOC submitted trial exhibits including these Claimants' declarations and testimony other witnesses to support their claim for damages (Dkt. Nos. 755-64):

1. Amnat Phonai
2. Amnuay Phiansing
3. Amphon Kanthawang
4. Aniwat Khadphab
5. Anucha Homphet
6. Aphiwat Phaisantham
7. Apichart Peayer

36

8.    Arun Nakhwan
9.    Boonlue Khadkantha
10.   Boonthiam Wonghamlve
11.   Bunyarit Pengbunma
12.   Chakkrapong Khongkhao
13.   Charat Khumphon
14.   Dechachok Pamueangmun
15.   Duang Kakaew
16.   Itthi Oa-Sot
17.   Jakarin Phookhiew
18.   Khamjuan Namwichai
19.   Khomkrit Aksorn
20.   Kittipong Phetpanya
21.   Krittanai Intakaeo
22.   Liam Kajai
23.   Narong Duangdet
24.   Natthawat Yahuafai
25.   Nikon Nasaeng
26.   Nirun Ruanjai
27.   Nophadon Seechachet
28.   Nopphon Fuchompa
29.   Phuchit Laoelit
30.   Prajuab Champar
31.   Prakran Radchai
32.   Prasoet Nomrawi
33.   Prawit Kaepon
34.   Ratthapon Yapunya
35.   Saiphan Mornkaew
36.   Sakda Phaisanwatthanakan
37.   Samrit Korpimai
38.   Sane Tanangoy
39.   Sarakham Lunlan
40.   Saran Nonanthi
41.   Sathit Viboonkul
42.   Soem Sitthiwang
43.   Sombat Paengmuang
44.   Somboon Meesri
45.   Somjai Phobai
46.   Somkhid Ud-Kon
47.   Somkhit Nasee

37

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 40 of 82   Page ID #:42
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 38 of 77   PageID #:
23165

48.   Sompong Seesuk
49.   Sopha Khaosa
50.   Sriwan Phujai
51.   Sutthichai Makhai
52.   Thanawat Chak Ano
53.   Thawat Maitham
54.   Uthen Wongjinda

### 1.   Claimants Suffered Emotionally and Physically.

121.   The Claimants experienced nightmares, headaches, depression,

anxiety, humiliation, and/or low self-esteem resulting from Global Horizons'

and/or Maui Pineapple's pattern or practice of discrimination.  (Ex16,¶22;

Ex17,¶58; Ex19,¶77; Ex20,¶25; Ex32,¶ 35; Ex33,¶66; Ex34,¶¶45,48;

Ex36,¶¶33,36; Ex38,¶38; Ex39,¶29 at p.10, ¶31 at p.11; Ex41,¶48; Ex42,¶26;

Ex43,¶¶51-52; Ex51,¶27; Ex127,¶53; Ex156,¶38; Ex180,¶¶35,90.)

122.   Claimants felt helpless, lost sleep, and/or weight because all they

could think of was the threats, horrible living/working conditions, lack of work,

and/or their debts while working for Global Horizons and/or Maui Pineapple.

(Ex15,¶¶19,27, 39; Ex16,¶22; Ex17,¶58; Ex18,¶¶48-49; Ex25,¶30; Ex26,¶50;

Ex28,¶¶40,47-48; Ex32,¶¶26,33; Ex33,¶¶28-29,66; Ex34,¶49; Ex35,¶¶41,57-58;

Ex37,¶23, 29; Ex38,¶¶38,40,43; Ex39,¶32 at p.11; Ex41,¶49; Ex43,¶52; Ex45,¶32;

Ex46,¶ ¶32,58; Ex49,¶ ¶34,78; Ex51,¶27; Ex54,¶23; Ex55,¶16; Ex57,¶33;

Ex59,¶60; Ex61,¶54; Ex62,¶29; Ex122,¶28; Ex127,¶44; Ex128,¶92; Ex156,¶38;

Ex180,¶¶35,91.)

38

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 41 of 82   Page ID #:43
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 39 of 77   PageID #:
23166

123.    Some Claimants became quieter, sad, less outgoing, less social, withdrawn or suffered from low self-esteem while working for Global Horizons and/or Maui Pineapple. (Ex34,¶50; Ex38,¶44; Ex43,¶52; Ex156,¶38; Ex180,¶36.)

124.    Global Horizons' and/or Maui Pineapple's pattern or practice of discrimination caused Claimants to stop trusting people. (Ex25,¶32; Ex28,¶58; Ex35,¶62; Ex53,¶34; Ex59,¶61; Ex180,¶64.) "Working for Global changed my [Krittanai Intakaeo's] view of the world. They took advantage of me and did not keep promises. The living conditions were horrendous. It affected my mental health." (Ex33,¶64.)

125.    Many Claimants suffered cramps, back/shoulder pain, pain on their hands or wrists, body aches, and/or fainted in the fields due to the grueling work at Maui Pineapple. (Ex1#s 529-30; Ex16,¶¶16,23; Ex17,¶53; Ex19,¶¶58-59; Ex21,¶39; Ex22,¶38; Ex26,¶45; Ex28,¶¶27, 48-48; Ex32,¶35; Ex35,¶46; Ex36,¶10; Ex46,¶52; Ex47,¶15; Ex53,¶¶24-25; Ex54,¶45; Ex59,¶51; Ex60,¶21; Ex61,¶¶40-41.)

126.    Some Claimants developed high blood pressure and/or stomach problems for not having enough food, the lack of kitchen facilities, and/or the stress while working for Global Horizons and/or Maui Pineapple. (Ex34,¶51; Ex38,¶45; Ex42,¶24; Ex59,¶60.)

39

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 42 of 82   Page ID #:44
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 40 of 77   PageID #:
23167

127.    Claimants and their families worried, stressed, and felt desperate

and/or anxious because Global Horizons and/or Maui Pineapple did not provide

enough work for the Claimants or Global Horizons paid the Claimants late and

they did not know whether they would be able to pay off their debt for the

recruitment fees or lose their families' land they had used for collateral.

(Ex15,¶¶19,39; Ex16,¶19; Ex17,¶25; Ex18,¶47; Ex19,¶71; Ex21,¶55; Ex22,¶28;

Ex25,¶¶16,24,30,32 at pp.8-9; Ex26,¶¶11,43,50; Ex27,¶10; Ex28,¶40, 49;

Ex30,¶¶16,18-19; Ex32,¶¶25-26,33; Ex33,¶¶28-29; Ex34,¶45; Ex36,¶31;

Ex37,¶23; Ex38,¶ ¶40,43; Ex39,¶29 at p.10,¶32, p.11; Ex41,¶47; Ex42,¶28;

Ex43,¶50; Ex45,¶ ¶32, 35; Ex49,¶78; Ex51,¶21,23, 27; Ex52,¶21,23; Ex52,¶¶27,

34; Ex53,¶31; Ex54,¶¶18, 22; Ex55,¶16; Ex56,¶¶23,29; Ex57,¶32; Ex58,¶19;

Ex61,¶17,47; Ex62,¶¶24-25; Ex122,¶28; Ex127,¶¶36,144; Ex128,¶¶26,59-60, 76;

Ex129,¶21; Ex134,¶¶40-41; Ex135,¶21; Ex138,¶32; Ex140,¶¶32,34; Ex144,¶23;

Ex146,¶31; Ex150,¶31; Ex151,¶34; Ex152,¶21; Ex153,¶27; Ex155,¶29;

Ex159,¶33; Ex160,¶28; Ex161,¶34; Ex162,¶¶59,83,87; Ex163,¶28; Ex169,¶32;

Ex177,¶30; Ex178,¶39; Ex179,¶70; Ex180,¶¶26, 35, 65.)

128.    Claimants lived in constant stress, fear, anxiety, pressure,

intimidation, insecurity, and were afraid throughout their employment Global

Horizons because of Global Horizons supervisors' threats of deportation, arrest,

physical abuse, transfers, curfews, restrictions, and confinement.  (Ex15,¶¶19, 39;

40

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 43 of 82   Page ID #:45
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 41 of 77   PageID #:
23168

Ex16,¶¶8,14-15; Ex17,¶¶25-26,28; Ex19,¶55; Ex22,¶¶14,19-21,26,39; Ex26,¶¶34,

36-37; Ex28,¶¶35-36, 51; Ex30,¶¶27-28; Ex31,¶23; Ex32,¶¶21,25; Ex33,¶60;

Ex35,¶¶27-28,37,59-60; Ex37,¶¶18,22; Ex39,¶25 at p.9; Ex40,¶¶18-20;

Ex42,¶¶9,10,23; Ex46,¶¶38,44; Ex47,¶¶13,21-23; Ex49,¶27; Ex50,¶11; Ex52,¶25;

Ex54,¶47; Ex57,¶32; Ex59,¶¶29,37,39,41; Ex127,¶51; Ex128,¶¶71-73;

Ex134,¶¶16,24; Ex146,¶16; Ex156,¶¶18,29; Ex162,¶¶31-33,47,71; Ex179,¶¶44-

45.)  Natthawat Yahuafai described "It was bad enough to be lied and deceived to

by Global, but what made things worse was the constant threats by Global's

supervisors."  (Ex35,¶27.)  Claimant Amphon Kanthawang "felt I had no choice

but to put up with all of Global's abuses, including all the threats that were made,

because I had to so much debt for the recruitment fee . . . ."  (Ex17,¶51.)

129.  Claimants were also afraid and intimidated because Global Horizons

supervisor Sam would walk around the Maui Pineapple worksite with a gun and

challenged the Claimants to fight.  (Ex16,¶13; Ex18,¶¶25,26; Ex22,¶20;

Ex61,¶¶29,31; Ex122,¶19.)  Kittipong Phetpanya worried about his safety because

"[S]am, the Global supervisor, came to our building with a big stick and

challenged us to fight him . . . ."  (Ex32,¶21.)

130.  Claimants felt offended, anger, stress, pressure, and were upset when

they were verbally abused and belittled by Global Horizons supervisors.

(Ex16,¶14; Ex17,¶56; Ex21,¶42; Ex24,¶18; Ex25,¶¶31, 33; Ex26,¶30; Ex29,¶12;

Ex37,¶13; Ex45,¶17; Ex49,¶¶26-28; Ex58,¶18; Ex60,¶23; Ex61,¶30; Ex62,¶12; Ex162,¶34; Ex180,¶47.)

131. Claimants were uncomfortable, discouraged, depressed, disappointed, angry, sad, frustrated and/or stressed but they felt forced to live in the horrible living conditions while working for Global Horizons and/or Maui Pineapple. (Ex16,¶9; Ex17,¶13; Ex19,¶44; Ex28,¶¶12, 22; Ex33,¶¶17,19; Ex38,¶29; Ex41,¶26; Ex42,¶22; Ex46,¶47; Ex53,¶20; Ex59,¶43; Ex61,¶35; Ex128,¶¶67-68,80; Ex156,¶19; Ex162,¶44; Ex180,¶76.) Claimants felt uncomfortable living in the overcrowded conditions with no privacy at Maui Pineapple. (Ex22,¶23; Ex25,¶32 at pg. 9; Ex26,¶32; Ex35,¶¶31,33.) Claimants were embarrassed and felt they had no choice but to shower in front of other Thai workers at one time at Maui Pineapple. (Ex21,¶37; Ex46,¶36.)

132. Claimants suffered from food shortages, which left them feeling hungry, bad, and it made it more difficult for them to work while working for Global Horizons and/or Maui Pineapple. (Ex23,¶10; Ex25,¶28; Ex29,¶11; Ex33,¶58; Ex35,¶35; Ex43,¶49; Ex44,¶12; Ex47,¶11; Ex48,¶12; Ex49,¶34; Ex50,¶16; Ex53,¶21; Ex135,¶14; Ex138,¶18; Ex140,¶15; Ex144,¶16; Ex146,¶¶20-21; Ex150,¶22; Ex151,¶15; Ex152,¶15; Ex155,¶18; Ex159,¶20; Ex160,¶¶15-16; Ex161,¶¶18, 20; Ex162,¶36; Ex169,¶18; Ex177,¶¶16, 19; Ex178,¶24.) Without sufficient food, Claimants lost weight and felt lightheaded. (Ex28,¶24; Ex30,¶23;

42

Ex32,¶24; Ex33,¶¶59,65; Ex49,¶34.)  Claimants hunted for food or ate the farms'
left over produce because of the constant food shortages.  (Ex28,¶23; Ex161,¶21;
Ex162,¶37.)  Some Claimants tried to eat as little as possible because they did not
know if they would have more food while working for Global Horizons.
(Ex26,¶11.)

133.   Claimants felt unsafe, afraid, and worried while being transported by
Global Horizons on the overcrowded buses since there were not enough seats for
everyone, and the Thai workers who arrived late would have to stand and/or sit on
each other's laps, the floor, and/or buckets.  (Ex21,¶38; Ex26,¶44; Ex30,¶¶13, 24;
Ex33,¶44; Ex42,¶25; Ex46,¶48; Ex53,¶30; Ex55,¶¶13,20; Ex57,¶23; Ex58,¶11;
Ex59,¶¶21-22,33,49; Ex60,¶30; Ex61,¶¶19,33; Ex122,¶27; Ex160,¶17; Ex161,¶22;
Ex162,¶48; Ex169,¶19.)

134.   Claimants felt that Global Horizons' and/or Maui Pineapple's
preferential treatment to non-Thai workers was unfair, and they became angry.
(Ex16,¶¶17,18; Ex17,¶23; Ex19,¶61; Ex22,¶¶23, 24, 25; Ex26,¶28; Ex28,¶29;
Ex30,¶24; Ex35,¶34,44; Ex42,¶29; Ex53,¶26; Ex58,¶9; Ex61,¶¶23-24.)

135.   Claimants felt abandoned, taken advantage of, cheated, betrayed,
hopeless, sad, suppressed, frustrated, angry, and disappointed by Global Horizons'
deception and false promises.  (Ex18,¶¶18,47,49,53; Ex21,¶55; Ex28,¶¶39,41;
Ex32,¶¶34,36; Ex33,¶64; Ex34,¶49; Ex35,¶38; Ex37,¶30; Ex38,¶¶41,43; Ex39,¶32

43

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 46 of 82   Page ID #:48
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 44 of 77   PageID #:
23171

at p.11; Ex41,¶52; Ex43,¶51; Ex46,¶57; Ex51,¶23; Ex52,¶26; Ex54,¶51; Ex57,¶32;

Ex59,¶14; Ex60,¶18; Ex61,¶50; Ex122,¶¶35, 52; Ex128,¶93; Ex130,¶8;

Ex147,¶10; Ex156,¶¶36,39; Ex162,¶¶94-95; Ex166,¶8; Ex167,¶6; Ex168,¶4;

Ex180,¶¶64,87-88.)

136.   Some Claimants experienced shame, embarrassment, anxiety, were

mocked at and/or called a fool after being sent back to Thailand by Global

Horizons. (Ex19,¶¶19,20; Ex51,¶25; Ex52,¶41; Ex162,¶¶63-66; Ex180,¶¶32-35.)

Anucha Homphet states:

> I felt embarrassed and shameful to face my family when I was
> sent back to Thailand.  I could not face my relatives who I
> borrowed deeds from.  They were all afraid of losing their land.
> So I just stayed at my family's farms.  I didn't want to go out.  I
> was also afraid to spend the night at my home.  I ended up
> spending the night in the shack in the middle of my family's
> rice field because I was so embarrassed to face my family and
> neighbors.  I was lied to, conned, and deceived by Global and
> its recruiters.  I was afraid and embarrassed . . . .

(Ex19,¶20.)

### 2.   Claimants Suffered Family Problems/Broken Marriages.

137.   Claimants suffered family problems, including but not limited to

stress in their marriages and quarrels between them and wives, because they were

not sending enough money back to Thailand without enough work and/or the

unreasonable pay delays from Global Horizons.  (Ex20,¶25; Ex32,¶¶37-38;

Ex34,¶45; Ex35,¶61; Ex38,¶40; Ex39,¶29 at p.10; Ex42,¶26; Ex127,¶52.)

44

Case 2:18-mc-00122-UA Document 1-1 Filed 09/12/18 Page 47 of 82 Page ID #:49
Case 1:11-cv-00257-LEK-RLP Document 767 Filed 12/19/14 Page 45 of 77 PageID #:
23172

138. Some suffered mistrust between them and their wives while working

for Global Horizons and/or Maui Pineapple. (Ex41,¶50; Ex127,¶¶52,54.) Prasoet

Nomrawi said, "When I was with Maui Pineapple and Global was only giving me

24 hours a week of work, my wife suspected I was earning more but spending it on

myself, and she did not believe I was earning less and would not answer the phone

when I called. This caused mistrust between us, and strained our relationship."

(Ex41,¶50.)

139. Some Claimants' wives divorced them because of the long physical

separation and/or inability to pay off their debt that came from Global Horizons.

(Ex15,¶39; Ex32,¶39; Ex36,¶32; Ex42,¶26; Ex49,¶74; Ex127,¶52; Ex180,¶31.)

Ratthapon Yapunya states:

> The inability to send money home caused me and my wife to
> argue. . . . Both of us felt very stressed by the lack of money to
> pay off the debt. It was during this time that my wife decided
> to separate from me. She wanted to divorce me . . . . I felt
> angry and blamed Global and Maui Pineapple for not giving me
> enough work because of having enough work was leading to the
> break-up of my family. If only I was paid what was promised, I
> could have paid off my debt and went home to save my family.
> Instead, I felt trapped because I had to continue working in the
> United States to earn the money to pay off the debt. I felt very
> depressed and cried many times over the break-up of my
> family.

(Ex42,¶26.)

140. Global Horizons changed the Claimants and their families' lives

forever. Claimants thought they would be away from their families for a few years

45

but it took them several years to pay off their debt because of the lack of work and not getting paid.  (Ex25,¶31; Ex28,¶57; Ex32,¶¶15,36; Ex35,¶56; Ex36,¶35; Ex38,¶¶17,39; Ex39,¶¶10,33 at pp.11-12; Ex41,¶20; Ex46,¶60; Ex49,¶¶74,79; Ex59,¶55; Ex61,¶¶53,55-56; Ex122,¶47; Ex127,¶53; Ex156,¶37.)  Somsak Wongkaeo said, "I lost my family based on Global's false promises. I expected to go back home to Thailand and now I lost everything. I feel that Global has ruined my life. Every time I think about Global I start to cry." (Ex49,¶79.)

141.   Many Claimants felt sad and/or guilty that they had to be away from their families, wives/children, for so long to pay off their debts since Global Horizons and/or Maui Pineapple did not provide them with enough work and/or Global Horizons did not pay them.  (Ex25,¶31 at pg. 9; Ex32,¶36; Ex39,¶33 at pp.11-12; Ex61,¶56.)  Samrit Korbpimai was affected since "I don't have a close relationship with my family because I had to work to pay off my debt.  When my children look at me, they look at me like I am a stranger.  They say hi to me that is it.  This makes me feel bad.  I feel that I did not do a good job as their father." (Ex61,¶56.)

142.   Itthi Oa-Sot suffered because he has not seen his wife and children in approximately 10 years. He did not get to bond with his children, "they only talk to me politely and engage in a few words of conversation with me. Each time my son speaks to me he speaks less than 10 words." (Ex28,¶57.)

46

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 49 of 82   Page ID #:51
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 47 of 77   PageID #:
23174

143.   Natthawat Yahuafai was affected because

> I had to be away from my children for all of those years since it
> took me longer to pay off my debt than what I anticipated. I felt
> sad because I did not think I was a good father to my children.
> I'm not as close to my children because I did not give them the
> warmth - being close to your children - as a father should . . .
> since I had to be here to work to pay off my debt.

(Ex35,¶56.)

144.   Somboon Meesri was affected because

> I have been in the U.S. for 10 years with no savings. I finish
> paying my debt for the recruitment fee last year.  I could not go
> back to Thailand before paying off my debt because I would
> lose my family's land and house.  As a result, my family and I
> have been affected since we have not seen each other for the
> last 10 years.  I did not get to see my children grow up.

(Ex59,¶55.)

145.   Thawat Maitham felt sorry he was not able to provide his young child

because

> When I left my family in Thailand, my youngest child was a
> little over a year old and I was constantly stressed because I did
> not know where to get money from to buy her milk. I felt sorry
> I was not able to provide for her. I have only seen my daughter
> once in the last 10 years and it was over the internet.

(Ex53,¶32.)

146.   Anucha Homphet and his family "have suffered so much because of

this nightmare experience with Global.  My father passed away a broken man

47

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 50 of 82   Page ID #:52
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 48 of 77   PageID #:
23175

because his son was saddled with debt. I could not go back to look after him when he was ill, which makes me very sad." (Ex19,¶75.)

### 3.   The Money Earned by Claimants While Working for Global Horizons and/or Maui Pineapple Was Not Enough to Support their Families.

147.   Some Claimants' wives had to work because the money Claimants earned with Global Horizons and/or Maui Pineapple was not as promised. (Ex18,¶53; Ex21,¶21; Ex59,¶57.) Even their children had to go to Bangkok to work because the money Claimants earned was not what Global Horizons promised. (Ex57,¶ 33.) Nophadon Seechachet felt "embarrassed when my wife had to explain to the family how I was not able to send enough money home. I felt like I let her and them down . . . ." (Ex37,¶25.)

### 4.   Claimants Feared for their Family's Safety in Thailand.

148.   Claimants were afraid for their families' safety in Thailand because of their inability to pay off the debt. (Ex39,¶30 at p.11; Ex49,¶76.) Krittanai Intakaeo explained, "I was afraid that since I had only paid 580,000 of the 680,000 owed to the recruiter, people would come to my house and harm my wife and daughter, who was only two years old when I left to work for Global." (Ex33,¶57.) Saran Nonanthi confirmed that his mother had to pay additional money after debt collectors in Thailand threatened to cause her harm and take her land if she did not pay additional money after he escaped from Global Horizons. (Ex46,¶59.)

48

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 51 of 82   Page ID #:53
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 49 of 77   PageID #:
23176

### 5.   Claimants Suffered in Silence While Working for Global Horizons and/or Maui Pineapple.

149.   Many of the Claimants felt they did not want to worry their families and/or were ashamed to tell their families about Global Horizons' and/or Maui Pineapple's abuses. (Ex15,¶46; Ex21,¶21; Ex24,¶19; Ex28,¶¶54, 56; Ex30,¶29; Ex33,¶30; Ex54,¶¶45,52-53; Ex56,¶24; Ex59,¶56; Ex62,¶42; Ex122,¶29.) Claimants stop calling their relatives and/or felt discourage to call their relatives in Thailand because they were ashamed to talk to their family knowing they could not help their family because Global Horizons didn't give them enough work. (Ex19,¶76; Ex24,¶27.)

150.   Chakkrapong Khongkhao was heartbroken and felt terrible when he told his father he did not have any money to lend him because there was not enough work with Global Horizons, when his father asked to borrow money because he wanted to buy a piece of land. (Ex24,¶¶26-27.)

### 6.   Claimants Sold Their Land to Pay Debts for Recruitment Fees.

151.   Some Claimants had to sell their land to pay debts for the recruitment fees because they couldn't pay it off while working for Global Horizons and/or Maui Pineapple. (Ex36,¶34; Ex49,¶¶57,73-74.) Somsak Wongkaeo states that his

> family suffered financially due to these delayed and non-
> payment of wages. Eventually, I had to sell a parcel of my farm
> in Thailand because I could not make payments. This was
> extremely difficult because the farm had been in my family for

49

-53-

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 52 of 82   Page ID #:54
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 50 of 77   PageID #:
23177

many generations, and it was my only source of income in
Thailand.

(Ex49,¶57.)

### 7.   Claimants Lost Their Land Because of Their Inability to Pay Their Debt Due to Global Horizons' and/or Maui Pineapple's Abuses.

152.   Some Claimants lost their families' ancestral farm land because they

were unable to pay the debt due to Global Horizons' and/or Maui Pineapple's

abuses.  (Ex28,¶45; Ex43,¶¶27,50.)  Itthi Oa-Sot felt

> really guilty, sad, and stressed that my family has lost their land
> because of me.  This land was part of my wife's heritage, and it
> was handed from generation to generation. . . .  I feel guilty and
> like a real small person for losing my wife's heritage.  I am the
> problem instead of the solution to my family's poverty.

(Ex28,¶45.)

### 8.   Claimants Are Still Paying Their Debt (10 years later).

153.   Some Claimants are still paying their debt, and still unable to move on

because the creditors still hold their land.  (Ex19,¶¶76,79; Ex53,¶34; Ex142,¶49;

Ex156,¶5.)

### 9.   Claimants felt imprisoned and/or like slaves while working for Global Horizons and/or Maui Pineapple.

154.   Global Horizons' supervisors confiscation of the Claimants' passports

made them feel uneasy, anxious, uncomfortable, afraid, trapped, and/or feel like

prisoners since they were stripped of their identifications.  (Ex15,¶16;

50

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 53 of 82   Page ID #:55
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 51 of 77   PageID #:
23178

Ex16,¶¶5,23; Ex17,¶12; Ex18,¶11; Ex19,¶¶13,74; Ex20,¶7; Ex21,¶¶11,16;

Ex22,¶10; Ex23,¶4; Ex24,¶7; Ex25,¶12; Ex27,¶4; Ex28,¶11; Ex29,¶5;

Ex30,¶¶8,16,20; Ex31,¶5; Ex32,¶5; Ex33,¶¶13,52,61; Ex34,¶¶5,26; Ex35,¶12;

Ex36,¶8; Ex37,¶¶11,13,27; Ex38,¶¶5,19; Ex39,¶12; Ex40,¶5; Ex41,¶¶5,21;

Ex42,¶6; Ex43,¶6; Ex44,¶5; Ex45,¶¶11-12; Ex46,¶¶12,14, 29; Ex47,¶5; Ex49,¶16;

Ex50,¶¶11,19; Ex51,¶¶9-10; Ex52,¶¶11-12,48; Ex53,¶10; Ex54,¶6; Ex55,¶11;

Ex56,¶¶11-12; Ex57,¶10; Ex58,¶6; Ex59,¶13; Ex60,¶17; Ex61,¶14; Ex62,¶¶11,31;

Ex122,¶¶10,18; Ex127,¶8; Ex128,¶¶7,21-22; Ex129,¶7; Ex132,¶6; Ex133,¶7;

Ex134,¶7; Ex135,¶¶6-7, 22; Ex138,¶6; Ex140,¶7,22; Ex144,¶6; Ex146,¶¶7-10;

Ex150,¶7; Ex151,¶7; Ex152,¶6; Ex153,¶¶6,18; Ex155,¶6; Ex156,¶¶10-11;

Ex157,¶6; Ex159,¶7; Ex160,¶8; Ex161,¶8; Ex162,¶¶22-25; Ex163,¶8; Ex167,¶8;

Ex169,¶7; Ex177,¶7; Ex178,¶¶7,9; Ex180,¶16.)  Global Horizons supervisor

Chaiyot Goodton confirmed seeing other Global Horizons supervisors collecting

the passports from the Claimants, prohibiting the Claimants from talking about the

working conditions, and watching the Claimants.  (Ex10: 98:21-99:25.)

155.   Claimants felt sad and terrible that they no freedom while working for

Global Horizons and/or Maui Pineapple.  (Ex18,¶¶23, 49; Ex21,¶¶16, 54;

Ex28,¶¶19-20.)  Aniwat Khadphab felt that Global Horizons' strict rules were

created by a lynch mob.  (Ex18,¶31.)

156.   Claimant Amnat Phonai felt like a prisoner because

> There were guards at the second [Maui Pineapple] dorm . . .
> [and] [t]hey had flashlights and batons with them when they
> patrolled the grounds at night; [Global Horizons supervisors]
> Sam and Shane would also patrol the grounds occasionally.
> Sam or Shane also started having roll call every night to make
> sure we were on the grounds.  This made me and the other Thai
> workers feel like we were prisoners.

(Ex15,¶34.)

157.   Claimant Amnuay Phiansing felt trapped, he had no choice but to live

in the overcrowded and filthy conditions at Maui Pineapple's dormitory housing,

(Ex16,¶9,) like a slave

> [b]ecause Sam was aware that my Thai co workers and I were
> hopelessly in debt, Sam would constantly threaten to deport us
> or transfer us to places where we would earn less money if he
> was not satisfied with our work.  When I heard these threats, I
> felt that I was almost like a slave because I felt that I had no
> choice but to do whatever Global told me to do.  I felt trapped
> and humiliated.  I felt trapped because I needed to continue
> working so my family would not lose our farm land.

(*Id.* at ¶20.)  Claimant Amnuay Phiansing also felt he and his Thai co-workers

were being tortured and feared that he would faint in Maui Pineapple's fields due

to the physically hard labor and heat.  (*Id.* at ¶16.)

158.   Claimant Amphon Kanthawang felt like he was imprisoned "I saw

Sam physically punch a Thai co-worker [while working at Maui Pineapple]. I felt

like I was in prison and Sam was the prison guard . . . ." (Ex17,¶26.)

52

159.   Claimant Aniwat Khadphab "did not understand why Global and Maui Pineapple had to supervise us Thai workers so extreme.  We were not inmates." (Ex18,¶25.)

160.   Claimant Anucha Homphet felt that:

> My experience with Global at Maui Pineapple was hellish.  I felt like I was living in a penal colony. . . .  The working conditions were absolutely brutal at Maui Pineapple.  There was no shade for us Thai workers and the weather was very hot.  When the Thai workers had a heat stroke, they would have to sit in the heat until they could get up to continue working.

(Ex19,¶74.)  He also states: "If I could go back in time I would not have come here to work for Global. . . .  We are victims of human trafficking because all of the money we earned belonged to them." (*Id.* at ¶78.)

161.   Claimant Apichart Peayer felt like a slave when they were watched by Global Horizons' security at Maui Pineapple and that "the conditions Global subjected me to were abusive.  I did not have my freedom; there were rules that restricted my freedom.  They treated us like soldiers or slaves." (Ex21,¶¶43,53.)

162.   Itthi Oa-Sot felt stuck here, like a slave, and felt like he was in a detention center at Maui Pineapple, which made him cry.  (Ex28,¶¶19,51,54-55.)

163.   Jakarin Phookhiew felt like a prisoner because of Global Horizons' restrictions and there was a high metal fence containing three layers of wire surrounding their housing facility at Maui Pineapple. (Ex29,¶8.)

53

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 56 of 82   Page ID #:58
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 54 of 77   PageID #:
23181

164.   Liam Kajai felt like a prisoner "at the second housing location [at

Maui Pineapple because] . . . Global hired ten security guards to patrol the area 24

hours a day [and] Global supervisors Pranee and Shane told us that these guards

were immigration officials who could arrest us if we ever tried to escape . . . ."

(Ex34,¶15.)

165.   Natthawat Yahuafai felt like a prisoner and slave labor which made

him feel uneasy and uncomfortable at Maui Pineapple with all of Global Horizons'

restrictions and curfews.   (Ex35,¶¶25,58.)   They "were threatened that if we

disobeyed the orders, we would either be sent back or not allowed to get an

extension on our contracts.   That is how Global pressured or controlled us by

making these types of threats."   (*Id.* at ¶25.)   Natthawat Yahuafai also states that, at

Maui Pineapple:

> I felt imprisoned, stressful, and worried about all of Global's
> house rules and constant threats that if I did not follow the
> rules, they would not renew my contract.   Not only did Global
> lie and deceived me by making false promises about there being
> enough work, they hurt me again by imposing all of these rules
> and forcing me to obey or they would threatened not to renew
> my contract.   I was forced to do what they say and I had to
> abide by their rules in order to continue working.   Global's
> supervisors created all these conditions to force us Thai workers
> to comply with their rules and to control us.

(Ex35,¶23.)

166.   Phuchit Laoelit felt like a prisoner "When I was forbidden to leave the

housing except to work, I felt trapped, felt like a prisoner . . . hopeless when I was

54

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 57 of 82   Page ID #:59
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 55 of 77   PageID #:
23182

threatened with being sent back to Thailand before I could pay my debts,"

(Ex38,¶41,) and "[b]ad and angry that Global treated me like a slave. Their

treatment of me was humiliating . . . ." (*Id.* at ¶42.)

167.   Ratthapon Yapunya felt that he was in jail while working for Global

Horizons and Maui Pineapple, and "emotionally drained due to being disrespected.

I felt that we were not treated as workers but as slaves." (Ex42,¶¶23, 30.)

168.   Saiphan Mornkaew felt like a prisoner because

> at Maui Pineapple, the Thai workers and I were instructed by
> Global's supervisors to never leave the housing and work
> premises without Global's supervision, and to never to speak to
> strangers/outsiders. There was a high metal fence with barbed
> wire on top surrounding our housing facility. Global subjected
> us to a curfew and daily head count. I felt like a prisoner.

(Ex43,¶9.)

169.   Saran Nonanthi felt like he was treated like a child with the rules

imposed by Global Horizons and his living situation, "They had a fence around me

and wanted me to stay within the fence. They had a very effective threat of sending

anyone who disobeyed or broke the rules home." (Ex46,¶46.)

170.   Somjai Phobai felt imprisoned "during my employment at Maui

Pineapple, the Thai workers and I were instructed by Global's supervisors to never

leave the housing and work premises without Global's supervision, and to never to

speak to strangers/outsiders. Global also subjected us to a curfew and daily head

count. I felt imprisoned." (Ex48,¶8.)

171.   Samrit Korbpimai felt like a prisoner due to Global Horizons'

restrictions and headcounts at Maui Pineapple.  (Ex61,¶28.)

172.   Claimants also felt like prisoners or uncomfortable by Global

Horizons' rules and/or Global Horizons' security guards watching them 24 hours

per day 7 days per week in Washington before they were sent back to Thailand

and/or to work in Hawaii.  (Ex133,¶¶11,31; Ex140,¶21; Ex146,¶14; Ex156,¶14;

Ex157,¶9; Ex160,¶9; Ex161,¶12; Ex162,¶61; Ex169,¶11; Ex177,¶10; Ex178,¶12;

Ex180,¶27.)

**10.   Maui Pineapple was one of the worst farms the Claimants
          worked at while working for Global Horizons.**

173.   Amnuay Phiansing states that he

> faced the most hardship in my life as a worker while working at
> Maui Pineapple.  The work was so hard that my hands hurt and
> became numb due to the repetitive motion of picking
> pineapples and my toe nails became infected . . . .  The
> experience working at Maui Pineapple still affects me today
> because I still feel angry when I think about all the abuses that I
> suffered while working at Maui Pineapple.  If I had known the
> hardship that I would have to endure while working at Maui
> Pineapple, I would not have come to the United States.

(Ex16,¶23.)

174.   Amphon Kanthawang's life at Maui Pineapple

> was hell and I thought my life would end at Maui Pineapple.  It
> was very hard work.  We had to walk through the dense
> pineapple grove, pick the pineapple, break the stem of the
> pineapple, and place the pineapple on the conveyor belt of a fast
> moving tractor.  It was very fast pace and we had to keep up

56

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 59 of 82   Page ID #:61
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 57 of 77   PageID #:
23184

with the moving tractor.  I saw some of my Thai co-workers
faint in the fields at Maui Pineapple.  On average, I would see
two of my Thai co-workers fainting in the fields per day.  Some
of Maui Pineapple's employees (tractor drivers) also saw my
Thai co-workers faint in the fields but did not stop to help them.
I felt cramps all over my body due to the strenuous work but I
had to pull through for my family because I could not afford not
to, otherwise, they had no roof over their heads.

(Ex17,¶53.)

175.   Boonlue Khadkantha states:

My worst experience was when I worked for Global at Maui
Pineapple.  We did not have enough food to eat and we were
forbidden from cooking at the housing.  If we were caught
cooking Global would destroy all or our utensils.  We were
confined to an area, not allowed to go outside, not allowed to
talk to outsiders or meet strangers, we were subject to a curfew,
and roll call in order to prevent us from running away.  We
were always threatened to be sent back to Thailand or
threatened with arrest by Sam.  Sam challenged us to duals.  It
was too much to bare [sic] . . . .

(Ex22,¶37.)

176.   Itthi Oa-Sot felt that:

The working conditions [especially at Maui Pineapple] were
much harder than in Thailand.  I was at a loss for
words/speechless because I never thought these horrible living
and working conditions would exist in the U.S.  I had seen my
Thai co-workers pass out when we were working at Maui
Pineapple but there was nothing anyone could do because we
had so much debt.

(Ex28,¶47.)

57

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 60 of 82   Page ID #:62
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 58 of 77   PageID #:
23185

177.   Krittanai Intakaeo was under "[a] lot of stress . . . at Maui Pineapple because there was not enough work to do and not enough money to live . . . I felt really helpless because there was no money in my account to even buy food." (Ex33,¶55.)

178.   Nophadon Seechachet states that:

> The living conditions at Maui Pineapple were worse than they were at Kauai and when I worked in Israel. I had to store my personal belongings under and next to the bed because the place was so small. The Global supervisors told us we cannot associate with outsiders, and gambling and alcohol was forbidden.

(Ex37,¶17.)

179.   Thawat Maithan states:

> I never experienced such physically grueling work as I did at Maui Pineapple. It would rain and then all of sudden it would be hot and I had to continue working with sweat and steam coming out of my body. Sometimes, I was unable to work for a couple of days because of the cramps I had all over my body, from my abdomen down to my legs due to the physically grueling work.

(Ex53,¶25.)

180.   Somboon Meesri states that:

> Global was more strict at the second housing at Maui Pineapple. There the two gates with security guards. There was an electric wire with bells on the back door. If we went through, we would be electrocuted. Global's supervisor Roy warned us that if we tried to leave, we would be electrocuted, and that Global would not be responsible.

58

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 61 of 82   Page ID #:63
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 59 of 77   PageID #:
23186

(Ex59,¶46.)  He also states:

> I fell down to hell even though I was still alive while working
> for Global at Maui Pineapple.  It was a terrible experience.  The
> living conditions, food and transportation were bad.  If I did not
> owe so much, I would not hesitate to leave Global.  I had no
> choice but to endure this hardship.

(Ex59,¶59.)

### III.  CONCLUSIONS OF LAW

#### A.   Statutory Damages Cap

1.     Global Horizons is an employer subject to the $300,000 cap for
compensatory and punitive damages because it employed over 500 employees
during the relevant time period.  42 U.S.C. § 1981A(b)(3)(D).  (Ex1#s 213-17,
deemed admitted pursuant to Fed. R. Civ. P. 34.)

2.     Maui Pineapple is an employer subject to the $300,000 cap for
compensatory and punitive damages because it employed over 500 employees
during the relevant time period.  42 U.S.C. § 1981A(b)(3)(D).  (Ex112#s 330-33.)

#### B.   Global Horizons' and Maui Pineapple's Joint Liability

3.     Global Horizons and Maui Pineapple are jointly liable for the
damages awarded to the Claimants who worked at Maui Pineapple in 2004 and
2005.

59

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 62 of 82   Page ID #:64
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 60 of 77   PageID #:
23187

**C.**   **Compensatory Damages of $50,000 to Each Claimant is Reasonable Based on Global Horizons' and Maui Pineapple's Default and their Uncontested Liability for the Pattern or Practice of Discrimination, Hostile Work Environment, and Retaliation affecting the Claimants Global Horizons Brought to Work In Hawaii.**

4.      "Plaintiff's burden in 'proving up' damages [on a motion for default judgment] is relatively lenient." *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992)).

5.      "With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002). The Court hereby adopts as true all of the allegations in the EEOC's TAC.

6.      In addition to the allegations in the complaint, the court may also take into consideration later provided evidence in the form of affidavits and exhibits. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

7.      "The district court is not required to make detailed findings of fact." *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1414 (9th Cir. 1990).

8.      This Court's findings of fact in *EEOC v. Global Horizons, Inc., 7* F. Supp. 3d 1053 (D. Haw. 2014), suffice to award compensatory damages of $50,000 for each Claimant.

## D.   **Compensatory Damages**

9.     The court may award compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3).

10.     "Compensatory damages 'are intended to redress the concrete loss that the plaintiff has suffered by reasoning of the defendant's wrongful conduct.'" *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 416 (2003).

11.     Compensatory damages are warranted here because in a default judgment, the well-pled allegations in the complaint regarding liability are true and upon a finding of liability of a pattern or practice of discrimination as exists here for discrimination, hostile work environment, and retaliation, each Claimant's pain and suffering is uncontested. *Fair Housing of Marin, v. Combs,* 285 F.3d 899, 906 (9th Cir 2002).

12.     The Ninth Circuit rejected a Fourth Circuit holding from *Price v. City of Charlotte,* 93 F.3d 1241, 1251 (4th Cir. 1996), that emotional distress damages must be supported by substantial evidence. *Zhang v. American Gem Seafood, Inc.,* 339 F.3d 1020, 1040 (9th Cir. 2003). "The holding of *Price* that 'the evidence of the emotional distress must be demonstrable, genuine, and adequately explained,' is not the law of this Circuit." *Zhang,* 339 F.3d at 1040 (citing *Price,* 93 F.3d at 1251).

13. "While objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in . . . the Ninth Circuit, or the Supreme Court." *Id.* (quoting *Passantino v. Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 513 (9th Cir. 2000)); *Chalmers v. City of Los Angeles,* 762 F.2d 753, 761 (9th Cir. 1985) (upholding emotional damages based solely on testimony); *Johnson v. Hale,* 13 F.3d 1351, 1352 (9th Cir. 1994) (noting that emotional damages may be awarded based on testimony alone or appropriate inference from circumstances); *Carey v. Piphus,* 435 U.S. 247, 264 n.20 (1978) (noting that emotional distress damages are "essentially subjective" and may be proven by reference to injured party's conduct and observations by others).

14. The Ninth Circuit in *Zhang* held that the plaintiff's testimony of disappointment, humiliation, and feeling that his dignity and reputation had been hurt were sufficient to award compensatory damages of either $123,155 or $223,155 for national origin discrimination. 339 F.3d at 1040-41.

15. The Claimants' declarations are sufficient to award compensatory damages of $50,000 to each Claimant in this action due to the egregious and pervasive nature of the discrimination as described in this Court's findings of fact set forth in *EEOC v. Global Horizons, Inc.,* 7 F. Supp. 3d 1053 (D. Haw. 2014).

62

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 65 of 82   Page ID #:67
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 63 of 77   PageID #:
23190

E.     **Punitive Damages**

16.     Punitive damages "are aimed at deterrence and retribution."

*Campbell,* 538 U.S. at 416.

17.     Punitive damages "may properly be imposed to further [the

government's] legitimate interest in punishing unlawful conduct and deterring its

repetition." *Id.*

18.     In a federal employment discrimination suit, punitive damages are

awarded against an employer who "'discriminate[s] in the face of a perceived risk

that its actions will violate federal law.' . . . [A]lthough egregious conduct could be

evidence of intent to break the law, such conduct [is] not required to establish

punitive damages liability.  Thus, in general, intentional discrimination is enough

to establish punitive damages liability." *Passantino,* 212 F.3d at 515 (quoting

*Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 536 (1999)).

19.     "Under Title VII, a plaintiff is entitled to punitive damages if he or

she 'demonstrates that the respondent engaged in a discriminatory practice or

discriminatory practices with malice or with reckless indifference to the federally

protected rights of an aggrieved individual.'" *Pavon v. Swift,* 192 F.3d 902, 909

(9th Cir. 1999) (quoting 42 U.S.C. § 1981a(b)(1)).

20.     In a Title VII discriminatory discharge case the Ninth Circuit held that

"to be entitled to an award of punitive damages, the plaintiff must demonstrate that

Case 2:18-mc-00122-UA Document 1-1 Filed 09/12/18 Page 66 of 82 Page ID #:68
Case 1:11-cv-00257-LEK-RLP Document 767 Filed 12/19/14 Page 64 of 77 PageID #:
23191

the defendant 'almost certainly knew that what he was doing was wrongful and

subject to punishment.'" *Pavon*, 192 F.3d at 909 (quoting *Ngo v. Reno Hilton

Resort Corp.,* 140 F.3d 1299, 1304 (9th Cir. 1998)).

21.     The Supreme Court provided three "guideposts" for determining

whether punitive damages are excessive: (1) "the degree of reprehensibility of the

defendant's conduct"; (2) "[the] ratio to the actual harm inflicted on the plaintiff";

and (3) "civil or criminal penalties that could be imposed for comparable

misconduct." *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 575-83 (1996).

22.     The three guideposts for assessing punitive damages while not to be

"rigidly or exclusively applied," provide a framework to be viewed in the context

of the case. *In re Exxon Valdez,* 472 F.3d 600, 613 (9th Cir. 2006).

23.     The Supreme Court and the Ninth Circuit have noted that the

"reprehensibility of the defendant's conduct" is the most important. *Arizona v.*

*ASARCO, LLC*, 733 F.3d 882, 886 (9th Cir. 2013) (quoting *Gore,* 517 U.S. at 575

("Perhaps the most important indicium of the reasonableness of a punitive damages

award is the degree of reprehensibility of the defendant's conduct.")).

24.     The Ninth Circuit has reiterated that "'intentional discrimination' is a

'serious affront to personal liberty' and should be considered high on the

reprehensibility scale" for purposes of assessing punitive damages. *Arizona v.*

*ASARCO, LLC*, 733 F.3d 882, 885-92 (9th Cir. 2013) (citing *Zhang v. Am. Gem*

64

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 67 of 82   Page ID #:69
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 65 of 77   PageID #:
23192

*Seafoods, Inc.,* 339 F. 3d 1020, 1043 (9th Cir. 2013) (citing *Romano v. U–Haul*

*Int'l,* 233 F.3d 655, 673 (1st Cir. 2000) (finding that a plaintiff's termination on the

basis of her sex was "more reprehensible than would appear in a case involving

economic harms only"))).

25.    In determining the reprehensibility of conduct, the Supreme Court

instructed lower courts to consider whether:

> the harm caused was physical as opposed to economic; the
> tortious conduct evinced an indifference to or a reckless
> disregard of the health or safety of others; the target of the
> conduct had financial vulnerability; the conduct involved
> repeated actions or was an isolated incident; and the harm was
> the result of intentional malice, trickery, or deceit, or mere
> accident.

*Campbell,* 538 U.S. at 419.

26.    The Ninth Circuit has ranked "threats of violence" as highest and

"acts of omission and mere negligence" lowest on the reprehensability scale.

*ASARCO,* 733 F.3d at 886; *Mendez v. County of San Bernardino,* 540 F.3d 1109,

1120 (9th Cir. 2008); *Swinton v. Potomac Corp.,* 270 F.3d 794, 818 (9th Cir.

2001). The Court's above findings of fact demonstrate that Global Horizons

engaged reprehensible acts including but not limited to threats of violence and

impose actual violence on the Claimants. Similarly, the Court's above findings of

fact demonstrate Maui Pineapple's reckless indifference to the violations

Claimants suffered. Maui Pineapple's reckless indifference to the violations of

65

Claimants' rights under Title VII constitute greater fault than acts of omission or mere negligence.

27.    The Ninth Circuit noted in *Passantino* that, after *Kolstad,* "in general, intentional discrimination is enough to establish punitive damages liability." *Passantino,* 212 F.3d at 515.

28.    Global Horizons' Chief Executive Officers Orian is designated as a proxy for purposes of punitive damages liability.

29.    Global Horizons' Vice President Knoller is designated as a proxy for Global Horizons for purposes of punitive damages liability.

30.    Punitive damages are warranted in this action, because the EEOC's case of intentional discrimination is based in part on the racial stereotypes against the Thai Claimants that were articulated by Global Horizons' CEO Orian who is a proxy for Global Horizons. *Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174, 1198-99 & n.24 (9th Cir. 2001).

31.    Punitive damages are further warranted in this action, because the EEOC's case of intentional discrimination is based in part on the physical and verbal abuse against Claimants by Global Horizons' Vice President Knoller who is a proxy for Global Horizons. *Id.*

32.    Because this Court found that Global Horizons' top management Knoller, Tubchumpol, Germann, and Wongsesanit harassed the Claimants in the

66

face of the perceived risk their conduct violated the law, *EEOC v. Global Horizons, Inc.*, 7 F. Supp. 3d at 1061, punitive damages are warranted as to each Claimant.

33.     Substantial punitive damages are warranted in this action because Global Horizons' standard operating procedure was to deter complaints about discrimination, interfere in governmental investigations regarding the discriminatory conduct, and to retaliate against Claimants who complained or participated in such investigation.

34.     The Ninth Circuit has held that substantial punitive damages may be award even where the fact-finder awards no compensatory damages or nominal damages.  *ASARCO*, 733 F.3d at 885-92 (125,000:1 ratio between punitive damages and compensatory damages "reasonable" for an individual victim of sexual harassment under Title VII where jury awarded $0 in compensatory damages, punitive damages reduced from $300,000 to $125,000).

35.     Punitive damages are warranted where it is uncontested that Claimants who were brought to work in Hawaii by Global Horizons were subjected to a pattern or practice of discrimination, hostile work environment, and retaliation. (Dkt. No. 682.)

67

36.   An award of $100,000 to each Claimant for punitive damages furthers the EEOC's statutory mandate to enforce Title VII by punishing unlawful conduct and deterring its repetition.

37.   It would be reasonable to award a total award to each Claimant of $150,000 in compensatory and punitive damages in this case because each Claimant suffered the same pattern or practice of discrimination, hostile work environment, and retaliation including threats of violence which the Ninth Circuit recognized as highest on the reprehensibility scale for punitive damages. *ASARCO,* 733 F.3d at 886.

38.   This Court rejects the EEOC's argument that each Claimant should receive a total of $300,000 in compensatory and punitive damages.  In so ruling, the Court recognizes that all of the Claimants were subjected to deplorable conditions, but the Court notes that the record indicates that some Claimants were subjected to more brutal treatment than others.  The EEOC has chosen to seek damages based on generalized proof regarding Global Horizons' and Maui Pineapple's pattern and practice, with anecdotal evidence of specific incidents, and that evidence overall does not support the requested damages amount.  The EEOC has not sought individual damages awards to each Claimant based upon the specific conditions and treatment to which each Claimant was subjected.  This Court concludes that an award of $50,000 in compensatory damages and $100,000

68

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 71 of 82   Page ID #:73
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 69 of 77   PageID #:
23196

in punitive damages, for a total award of $150,000, to each Claimant is sufficient
to reflect the seriousness of injuries inflicted upon the class of Claimants as a
whole.

**F.      EEOC's Damages Request Remains Uncontested because Global
          Horizons and Maui Pineapple Failed to Establish their Burden of
          Refuting that the Pattern or Practice of Discrimination, Hostile Work
          Environment, and Retaliation did not apply to any Claimant.**

39.      At the initial "liability" stage of a pattern-or-practice suit, the EEOC is
not required to offer evidence that each person for whom it will ultimately seek
relief was a victim of the employer's discriminatory policy.  The EEOC met its
burden is to establish a prima facie case that such a policy existed.  The burden
then shifts to the Defendants to defeat the prima facie showing of a pattern or
practice by demonstrating that the EEOC's proof is either inaccurate or
insignificant. *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 336 (1977).

40.      Global Horizons and Maui Pineapple failed to defeat the prima facie
showing of the pattern or practice.  The EEOC's well-pled allegations that each
Claimant was subjected to egregious discrimination remains unchallenged and
warrants damages in the amount of $150,000 for each of the Claimants identified
by the EEOC.

41.      To the extent any finding of fact is more properly considered a
conclusion of law, it shall be deemed as such.  To the extent any conclusion of law
is more properly considered a finding of fact, it shall be deemed as such.

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 72 of 82   Page ID #:74
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 70 of 77   PageID #:
23197

## IV. CONCLUSION

For good cause shown based on the foregoing, **IT IS HEREBY**

**ORDERED** that:

1.      The Court grants the EEOC's request for damages and injunctive

relief;

2.      Global Horizons is liable for total damages of $12,300,000 or

$150,000 for each of the 82 Claimants that Global Horizons brought to work in

Hawaii as provided by the Civil Rights Act of 1991, 42 U.S.C. §1981a(b)(3)(D)

and who submitted signed declarations in support of the EEOC's request for

damages (Exs15-62, 122, 127-30, 132-35, 138, 140, 144, 146-47, 150-53, 155-57,

159-63, 166-69, 171, 177-78, 180).

3.      The Court offsets $3,600,000 from Global Horizons' total damages of

$12,300,000.  The offset of $3,600,000 represents the total amount from the

settlements between the EEOC and other defendants, Captain Cook Coffee Co.,

Ltd., Del Monte Fresh Produce (Hawaii), Inc., Kauai Coffee Company, Inc.,

Kelena Farms, Inc., and Mac Farms of Hawaii, LLC, in this case.

4.      Accordingly, the total monetary damages award for the 82 Claimants

Global Horizons brought to work in Hawaii and who submitted signed declarations

in support of the EEOC's request for damages is $8,700,000.

70

5.     Global Horizons and Maui Pineapple are jointly and severally liable in the amount of $150,000 to each of the 54 Claimants identified by the EEOC as a Claimant who worked at Maui Pineapple and who submitted signed declarations in support of the EEOC's request for damages. (Exs15-48, 50, 52-62, 122, 130, 147, 152, 166-68, 171.) Thus, Global Horizons and Maui Pineapple are jointly and severally liable for $150,000 x 54 = $8,100,000.

6.     Of the $8,700,000 in damages awarded against Global Horizons, Global Horizons and Maui Pineapple are jointly and severally liable for $8,100,000 because 54 Claimants out of the 82 Claimants Global Horizons brought to work in Hawaii worked at Maui Pineapple.

7.     To the extent that Global Horizons fails to pay $8,700,000 within twenty (20) days of the entry of this judgment, such amount shall be entered as a judgment against Global Horizons and post judgment interest shall be awarded from the date of the judgment through the date of collection pursuant to 28 U.S.C. § 1961.

8.     To the extent that Maui Pineapple and/or Global Horizons fail to pay $8,100,000 for the 54 Claimants who worked at Maui Pineapple and who submitted signed declarations in support of the EEOC's request for damages within twenty (20) days of the entry of this judgment, such amount shall be entered as a judgment against Maui Pineapple and Global Horizons post judgment interest shall

71

be awarded from the date of the judgment through the date of collection pursuant to 28 U.S.C. § 1961.

9.    The Court grants the EEOC's request for a permanent injunction against Global Horizons and Maui Pineapple.

10.    Global Horizons and Maui Pineapple are hereby enjoined from engaging in any conduct that violated Title VII, including direct acts of discrimination by their proxies, and/or Global Horizons' and/or Maui Pineapple's negligent failure to prevent and/or correct discrimination by their respective agents, employees, and/or sub-contractors and their sub-contractors' supervisory employees.

11.    Global Horizons and Maui Pineapple are hereby enjoined from engaging in, implementing, or permitting any action, policy or practice with the purpose of retaliating against any person who engaged in protected activity with respect to Title VII.

12.    Global Horizons and Maui Pineapple shall develop, implement, and effectively distribute to all employees a policy and complaint procedure ("Policy") with respect to discrimination and retaliation. Global and Maui Pineapple shall translate the policies and procedures into the dominant language of the employees so that they can understand them.

72

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 75 of 82   Page ID #:77
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 73 of 77   PageID #:
23200

13.     Global Horizons and Maui Pineapple shall develop and implement a procedure regarding how to conduct, document, and report an investigation of discrimination complaint ("Investigation Procedure").

14.     Global Horizons and Maui Pineapple shall ensure annual, live training for all supervisory employees regarding their rights, responsibilities, and obligations under the Policy, the Investigation Procedure, and with respect to discrimination and retaliation.  Global Horizons and Maui Pineapple shall also ensure annual, live training of at least one hour for all non-supervisory employees regarding their rights and responsibilities under the Policy, the Investigation Procedure, and with respect to discrimination and retaliation.

15.     Maui Pineapple should hold all Farm Labor Contractors ("FLC") accountable for Title VII compliance.  Prior to entering into a contract with any FLC, Maui Pineapple shall require the contractor to provide Maui Pineapple a copy of its anti-discrimination, anti-harassment, and anti-retaliation policies and reporting process.

        a.     If a complaint is lodged with Maui Pineapple, it shall refer to the FLC for investigation and resolution.

        b.     If a complaint is lodged about Maui Pineapple's employees, Maui Pineapple shall investigate promptly and resolve the matter and refer it to the

73

FLC. Any contract shall include a provision requiring the FLC to comply with all federal, state, and local laws.

      c.     Maui Pineapple shall conduct audits of the housing provided to any FLC or labor contractor employees during the contract period.

      d.     Maui Pineapple shall provide, publicize, and post a Hotline for its FLC's employees to contact Maui Pineapple regarding any questions, concerns, and/or complaints pertaining to their working and/or housing conditions during their employment at Maui Pineapple.

      e.     Maui Pineapple shall provide an orientation for all FLC's employees to inform them directly of the Hotline.

      f.     Maui Pineapple shall further assess and/or monitor all FLC's hired by requiring that the FLC maintain and/or provide to Maui Pineapple within ten (10) days of a request by Maui Pineapple the following:

           i.     payroll documents and cancelled checks;

           ii.     all complaints regarding failure to pay wage, pay delays or shortages;

           iii.     certification by pay period of payment of all wages due under penalty of perjury in a form created and/or approved by Maui Pineapple;

74

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 77 of 82   Page ID #:79
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 75 of 77   PageID #:
23202

          iv.     copy of policies regarding against discrimination, hostile work environment, retaliation, and/or issues pertaining to pay and/or benefits and polices regarding investigation of such complaints;

          v.     certification of the completion of training for supervisors regarding Title VII once every two years;

          vi.     copy of Notice of Action listing all employees authorized to work at Maui Pineapple under each particular Labor Certification pertaining to Maui Pineapple;

          vii.     certification confirming list of all workers authorized and assigned under the clearance order;

          viii.     notification to Maui Pineapple within ten (10) days when a FLC employee leaves or transfers and a summary of the reasons and/or circumstances;

          ix.     certification regarding prior complaints, investigation, findings, and resolution of any matters pertaining to Title VII;

          x.     certification of habitable housing;

          xi.     certification of access to adequate food and water supplies for workers;

          xii.     certification regarding any recruitment fees charged by the FLC or any agent of the FLC;

75

Case 2:18-mc-00122-UA   Document 1-1   Filed 09/12/18   Page 78 of 82   Page ID #:80
Case 1:11-cv-00257-LEK-RLP   Document 767   Filed 12/19/14   Page 76 of 77   PageID #:
23203

xiii.   certification that FLC reimbursed any travel reimbursement due to any worker;

xiv.   certification of payment of guaranteed pay where work completed prior to end of the contract period;

xv.   confirmation of valid federal farm labor contractor's license and for the applicable state and farm labor contractor driver's license(s);

xvi.   certification regarding safe and not overcrowded transportation from housing to farm and at farm;

xvii.   certification regarding whether the FLC has received any complaints of discrimination prior to any contract with Maui Pineapple; and

xviii.   description of actions taken in response to the complaints and summary of resolution.

16.   Should Global Horizons engage recruiters or contract with recruiters, Global Horizons shall ensure that they comply with obligations under Title VII. Global Horizons shall provided all of its policies and procedures regarding Title VII to all recruiters who provide services to Global Horizons and Global Horizons shall ensure that the recruiters comply with Title VII and this Injunction. Global Horizons shall ensure that the recruiters disseminate Global Horizons' policies and procedures regarding Title VII to all applicants.

76

17.    Global Horizons shall ensure that all employees are paid for work they performed and ensure that its policies, procedures, and practices pertaining to payment of wages and/or benefits do not discriminate.

18.    Global shall comply with all state and federal employment laws, including all laws relating to discrimination based on legally protected class in employment.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, December 19, 2014.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION V. GLOBAL HORIZONS, INC., ET AL.; CIVIL NO. 11-00257 LEK-RLP; FINDINGS OF FACT AND CONCLUSIONS OF LAW**

77

Notice of Electronic Filing

The following transaction was entered on 12/19/2014 at 3:21 PM HST and filed on 12/19/2014
Case Name:    Equal Employment Opportunity Commission v. Global Horizons, Inc. et al
Case Number: 1:11-cv-00257-LEK-RLP
Filer:
Document Number:    767

**Docket Text:**
FINDINGS OF FACT AND CONCLUSIONS OF LAW. Signed by JUDGE LESLIE E.
KOBAYASHI on 12/19/2014. (eps)
CERTIFICATE OF SERVICE
Participants registered to receive electronic notifications received this document electronically at
the e-mail address listed on the Notice of Electronic Filing (NEF). Participants not registered to
receive electronic notifications were served by first class mail on the date of this docket entry


1:11-cv-00257-LEK-RLP Notice has been electronically mailed to:

Mark J. Bennett    mbennett@starnlaw.com

Florence T. Nakakuni    florence.nakakuni@usdoj.gov, USAHI.ECFNarcotics@usdoj.gov,
pat.redondo@usdoj.gov

Michael Jay Green    michaeljgreen@hawaii.rr.com, edna@michaeljaygreen.com,
joell@michaeljaygreen.com, kelly@michaeljaygreen.com, laura@michaeljaygreen.com

Barbara A. Petrus    bpetrus@goodsill.com, bbrickwood@goodsill.com,
scharboneau@goodsill.com

David W.H. Chee    dchee@tqlawyers.com, scornell@tqlawyers.com

Carolyn K. Wong    cwong@goodsill.com, bbrickwood@goodsill.com,
scharboneau@goodsill.com

Sarah O. Wang    swang@marrjones.com, jkatzman@marrjones.com, jsakai@marrjones.com,
mhjw_efiling@marrjones.com, salejado@marrjones.com

Christopher S. Yeh    cyeh@marrjones.com, roshiro@marrjones.com,
tfuyumuro@marrjones.com

Anne T. Horiuchi    ahoriuchi@goodsill.com, bbrickwood@goodsill.com,
scharboneau@goodsill.com

Gerald L. Maatman, Jr   gmaatman@seyfarth.com, chidocket@seyfarth.com, hahern@seyfarth.com, nnovotny@seyfarth.com

Raymond T. Cheung   raymond.cheung@eeoc.gov

Anna Y. Park   lado.legal@eeoc.gov, anna.park@eeoc.gov, kenneth.jackson@eeoc.gov, tracy.villemarette@eeoc.gov, trevor.mccardle@eeoc.gov, wilma.deguzman@eeoc.gov

Sue J. Noh   Sue.Noh@eeoc.gov, kenneth.jackson@eeoc.gov, tracy.villemarette@eeoc.gov

Derek W. Li   derek.li@eeoc.gov, lado.legal@eeoc.gov, wilma.deguzman@eeoc.gov

Connie Liem   connie.liem@eeoc.gov, lado.legal@eeoc.gov

Darin Robinson Leong   dleong@marrjones.com, MHJW_EFiling@marrjones.com, jsakai@marrjones.com, tfuyumuro@marrjones.com

Richard John Wallsgrove   rwallsgrove@starnlaw.com, gsakai@starnlaw.com, jcarreiro@starnlaw.com, mbennett@starnlaw.com, rwcourtnotices@gmail.com

Jim Darnell   jdarnell@jdarnell.com, ldatnoff@jdarnell.com, swilcox@jdarnell.com

Lorena Garcia-Bautista   Lorena.Garcia@eeoc.gov, tracy.villemarette@eeoc.gov

Rumduol Vuong   rumduol.vuong@eeoc.gov

Christopher J. DeGroff   cdegroff@seyfarth.com, chidocket@seyfarth.com, yvasquez@seyfarth.com

Laura J. Maechtlen   lmaechtlen@seyfarth.com, ggarcia@seyfarth.com

Daniel H. Weiss   Daniel.Weiss@usdoj.gov, Angela.Washington@usdoj.gov, Steven.Harrell@usdoj.gov

Dax B. Deason   ddeason@deasonlawgroup.com, slimon@deasonlawgroup.com

Robb D. McFadden   rmcfadden@seyfarth.com, mhensel@seyfarth.com

Robert Brian Wong   bwong@seyfarth.com

Mark Ogden   mogden@littler.com, mmartin@littler.com, phoecf@littler.com

Kristin R. Culbertson   kculbertson@littler.com, amachrol@littler.com, phoecf@littler.com

Christie L. Kriegsfeld   ckriegsfeld@littler.com, lboone@littler.com, phoecf@littler.com

Javier Lopez-Perez      lopezperezlaw@gmail.com

1:11-cv-00257-LEK-RLP Notice will not be electronically mailed to:

Captain Cook Coffee Company Ltd.
***MAIL RETURNED AS RETURN TO SENDER/UNABLE TO FORWARD"
Attn: Mr. Steve McLaughlin, President
32 Adrian Court
Burlingame, CA 94010

The following document(s) are associated with this transaction:
Document description:Main Document
Original filename:n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1095854936 [Date=12/19/2014] [FileNumber=1832218-
0] [1c14e8281abe6774f004309c9a2ea70c7358c035df385d2abd007561dc7be32166
65232a1ad7ec1a22c2117efd3df5cdb4401d1f53f32ae9ccda913e5ada5ecb]]